Commonwealth of Pennsylvania *v.* Theodore Eisenhower, Appellant.

*Criminal law—Murder—Mistake in person.*

A person who deliberately shoots another in the back with a pistol at short range is guilty of murder in the first degree, notwithstanding the fact that the person shot was not the person intended.

*Criminal law—Murder—Evidence—Charge of the court.*

On the trial of an indictment for murder it appeared that the deceased was killed by a pistol shot fired by the prisoner. There was evidence that a lost drainage tube inserted by the surgeons to relieve their patient had found its way into the spinal canal, and it was alleged that this caused the death. The court in its charge said: "but suppose it did, the prisoner cannot escape by showing that death was the result of an accident occurring in an operation which his felonious act made necessary. There is no pretense that the drainage tubes were not required, or that they were improperly placed." *Held,* not to be error.

*Criminal law—Murder—Jury—Recalling jurors who have been set aside.*

In a murder trial it is not error to refuse to recall first the juror that has been last "stood aside." Jurors who have been "stood aside" should be recalled in the order in which they have been "stood aside."

*Criminal law—Murder—Order of trial—Examination of prisoner.*

In a murder trial where a prisoner has taken the stand in his own behalf, he may be recalled for cross-examination during the time in which the rebuttal testimony of the commonwealth is being offered.

The order in which a trial shall proceed must be left largely to the discretion of the court.

*Criminal law—Murder—Improper remarks of district attorney.*

Alleged improper remarks of a district attorney in a murder trial cannot be considered by the Supreme Court where attention was not called to them at the trial, and they were not made part of the record. The fact that they were embodied in reasons for a new trial is not sufficient, since the discretion of the court in refusing a new trial on such grounds is not reviewable.

*Criminal law—Murder—Separation of jury.*

In cases of conviction of capital offenses the fact of the separation of the jury further than is necessarily required to enable them to perform their duties as such, and under the care of a sworn officer, creates a presumption of improper influence; but it is a presumption which the commonwealth may rebut by clear and satisfactory evidence.

*Criminal law—Murder—Employment of private counsel.*

In a murder trial the action of the trial court in permitting private counsel to close the case for the commonwealth furnishes no ground for reversing a judgment against the prisoner.

Argued March 8, 1897.   Appeal, No. 84, Jan. T., 1897, by defendant, from judgment of O. and T. Schuylkill Co., March T., 1896, No. 378, on verdict of guilty of murder in the first degree. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ.   Affirmed.

Indictment for murder.   Before SAVIDGE, P. J., of the 8th judicial district, specially presiding.

At the trial it appeared that on February 17, 1896, John H. Schwindt and Patrick Monaghan left the colliery at which they had been working to go to their homes.

As they approached the borough of Shenandoah, they were walking leisurely between the tracks of the Lehigh Valley railroad, Schwindt being on the right hand side of Monaghan. When they arrived close to the corner of Main and Laurel streets, Theodore Eisenhower, the defendant, was seen ten or twelve feet in the rear of Schwindt and Monaghan, walking quickly toward them, and when within the distance of one or two steps of them was seen to put his hand in his right hand pocket, draw forth a revolver, and fire a shot into the back of Schwindt, who immediately fell to the ground with the exclamation, " I am shot."

Eisenhower stood for a minute or so over the body of Schwindt, then turned and ran south on the railroad track for a short distance, then east around a pile of rocks located near the railroad track, towards Main street, where he was overtaken by H. W. Smith and others, and the pistol with which he had done the shooting was taken from him.

After the shooting, upon an examination by the physicians, it was found that the deceased was suffering from a gunshot wound in the back near the tenth dorsal vertebra, and that his lower extremities were completely paralyzed, both as to motion and sensation.

Dr. J. C. Biddle was immediately sent for, and on the following morning, February 18, about the hour of nine o'clock, arrived at the house of the deceased, and, after making an examination, concluded that the cause of the paralysis was due either to a pressure upon the spinal column or an injury to the cord, and at once informed the family or the physicians in attendance that the only chance the deceased had for his life was to remove the

obstruction if it could be, or remove the cause if possible. On the same day an operation was performed by Dr. Biddle, and it was found that the bullet in its passage had severed the spinal cord about half, which wound, of itself, according to the testimony of Dr. Biddle, was necessarily fatal. He testified that the cause of death was inflammation of the membranes of the spinal cord caused by the bullet. Schwindt died on the evening of the 26th of February, about the hour of nine o'clock.

It appeared at the trial that no difficulty had ever occurred between the deceased and the defendant, but that a difficulty had occurred one night during the month of August, 1895, between William Schwindt, twin brother of the deceased, and the defendant ; that during a scuffle that occurred it appears that Eisenhower's ribs had been injured and that he subsequently prosecuted William Schwindt for inflicting the injuries ; that from the time of this difficulty up to within a short time prior to the killing of John Schwindt, the defendant had made threats to take the life of William Schwindt.

It will further appear from the testimony of the defendant himself that in the latter part of January, a few weeks prior to the killing of Schwindt, defendant purchased a revolver in a hardware store in Pottsville ; that he carried that revolver with him constantly loaded from that time up to the time of the killing ; that on the morning of February 17, he left the house of his sister, who resided in Ringtown, with his revolver in his overcoat pocket; that he came to Shenandoah, sometime during the morning of the 17th ; that he visited Wagner's and Costeller's saloons and had drinks therein ; that he recollects that he changed a five dollar bill in Wagner's for drink, taking a whisky, recollects the change he received, bills and silver; that he remembers walking down within sight of the Turkey Run colliery where he knew that both the Schwindt boys were employed, he himself having been employed at said colliery sometime prior thereto as a teamster ; recollects all his actions and whereabouts up to the time of the killing.

In appellant's history of the case it is stated that appellant was locked out of his house one night by his wife, and afterwards William Schwindt and he went to the house together and the door was opened by the wife, and they were both admitted into the room, where they sat talking and laughing together

until the defendant fell asleep on the floor, leaving William Schwindt and the defendant's wife alone in the room, that Eisenhower awoke and found the light in the room turned down and his wife sitting in Schwindt's lap; that defendant immediately jumped up and he and Schwindt got into a tussle in which Schwindt fractured one of the defendant's ribs, and then ran from the house as did also the wife and children, remaining away from the house all that night and part of the next day; that from that time on defendant and his wife had frequent quarrels and separations, she teasing and twitting him about other men. She had him arrested several times for assault and battery which cases were always settled before going to court, and she finally succeeded in driving him away from the house; that defendant is an ignorant man; that he was employed as a teamster around the mines; that on the afternoon of February 17th, or thereabouts, he was going down the main street of Shenandoah when he met his little boy with whom he had a long conversation in a bakery store where he had taken him to buy candy; that he inquired about his family and asked the boy if he did not want him to come home, to which the boy replied that he did, but his mother had forbidden him to talk to his father; that he bade his little son goodbye with tears in his eyes; that his mind at this time was wandering, and while in this condition he met and shot John Schwindt, who, in falling, said, " He has shot the wrong man; " that defendant stood staring at deceased for several minutes, then turned and walked up an embankment at the side of the road and down to and upon the main street, where he surrendered himself to the officers.

Other facts appear by the opinion of the Supreme Court. The jury found the defendant guilty of murder of the first degree, upon which he was sentenced by the court.

*Errors assigned* were as follows:

1. In overruling defendant's motion to call the last juror stood aside first.

2. In allowing the commonwealth to cross-examine the defendant's witnesses before permitting them to state whether or not the prisoner was of unsound mind at the time of the shooting, and in not permitting defendant's counsel to cross-

examine the commonwealth's witnesses before permitting them to give an opinion as to the sanity or insanity of the prisoner.

3. In not compelling the commonwealth to call Mrs. Arthurson, a witness subpœnaed by the commonwealth, who saw the prisoner on the day of the shooting.

4. In allowing the commonwealth to call Theodore Eisenhower in rebuttal for the purposes of contradiction and to test memory.

5. In not sustaining defendant's motion to withdraw a juror when commonwealth's counsel made the statement that we, that is defendant, had a right to call Mrs. Eisenhower, the prisoner's wife, and that the court said they had no right to prove Mrs. Eisenhower's character.

6. In not calling the district attorney to account for improper remarks to the jury.

7. In not sustaining the defendant's objection to private counsel closing the case for the commonwealth.

8. In refusing to affirm the defendant's third point which reads as follows : "3. If the jury believe that the operation and medical treatment performed by the doctors tended to shorten the life of the deceased and intervened (interfered) with the course of nature in healing up the wound they should acquit the defendant."

*Charles N. Brunn,* with him *George Dyson,* for appellant, cited as to the question of insanity : Coyle v. Com., 100 Pa. 573; Ortwein v. Com., 76 Pa. 414; Com. v. Mosler, 4 Pa. 265; Sayres v. Com., 88 Pa. 291; Com. v. Winnemore, 1 Brewster, 365. As to the separation of the jury : Peiffer v. Com., 15 Pa. 468. As to the remarks of the district attorney : Com. v. Bruner, 11 Pa. C. C. 428 ; Com. v. Smith, 10 Phila. 189.

*Edgar W. Bechtel,* district attorney, and *John F. Whalen,* for appellee were not heard, but cited in their printed brief as to the cause of the death : Com. v. Green, 1 Ashmead's Rep. 289; Com. v. Hamilton, Lewis's Criminal Law, 422. As to the question of insanity : Com. v. Gerade, 145 Pa. 289 ; Com. v. Woodley, 166 Pa. 463. As to the remarks of the district attorney : Com. v. Weber, 167 Pa. 153 ; Com. v. Windish, 176 Pa. 167. As to the separation of the jury : Alexander v. Com., 105 Pa. 1.

PER CURIAM, May 27, 1897:

A careful consideration of the voluminous record in this case has convinced us that there is no error therein of which the prisoner has any just reason to complain. The trial appears to have been so conducted by the learned president of the eighth judicial district, who specially presided thereat, as to secure for the accused a fair and impartial trial. We find nothing in any of his rulings that would justify us in reversing the judgment of the law pronounced on the verdict; nor is there anything in either of the specifications of error that requires discussion.

It was conclusively shown, and is not denied, that as John Schwindt, the deceased, was returning home from his work in company with a fellow workman, he was followed by the prisoner, whose presence was unknown to them, and shot in the back with a pistol at short range. The ball entered near the tenth dorsal vertebra and, passing through the spinal column, partly severing the cord, lodged in the vertebra on the opposite side. It was claimed by the commonwealth, and the evidence tended strongly to prove, that the pistol shot wound thus inflicted by the prisoner was the cause of Schwindt's death within less than ten days thereafter. Without attempting to collate or further refer to the evidence on which the commonwealth relied for a conviction of murder of the first degree, it is quite sufficient to say it was not only abundant, and practically undisputed, but it tended strongly to prove that a wilful, deliberate and premeditated murder was committed by the prisoner. While the shooting was not, nor could it be, denied by him, he claimed that he mistook the deceased, John Schwindt, for his twin brother, William Schwindt, with whom he had been on unfriendly terms for some time, and whose life, as shown by the testimony, he had repeatedly threatened. Conceding what —according to the evidence—was doubtless the fact, that by mistake the prisoner shot the wrong person, that, of course, could not in any degree lessen his guilt. The grounds of defense relied on were, (1) insanity of the prisoner at the time of the shooting and prior thereto, and (2) that John Schwindt's death resulted not from the pistol shot wound, but from the surgical operation performed by the physicians in their efforts to extract the pistol ball, etc. Some testimony was introduced for the purpose of sustaining each of these positions. The case

was fairly submitted to the jury, on all the evidence properly before them, in a clear, comprehensive and fully adequate charge, in which they were distinctly and accurately instructed by the learned trial judge, not only as to the questions pertaining to the two lines of defense above stated, but also as to all the questions presented by the evidence on both sides. Referring to the allegation, relating to the second ground of defense, that a lost drainage tube (inserted by the surgeons in attendance to relieve their patient, etc.) "found its way into the spinal canal and caused the death of John Schwindt," the learned judge said: "But suppose it did, the prisoner cannot escape by showing that death was the result of an accident occurring in an operation which his felonious act made necessary. There is no pretense that the drainage tubes were not required, or that they were improperly placed." This was clearly correct; and, without specially referring to them, the same remark is applicable to the instructions given in relation to both lines of defense. The jury, under proper and adequate instructions, refused to find in favor of the prisoner on either ground, and we have no doubt they were fully warranted by the evidence in so doing.

There was no error in denying the motion to recall first the juror that had been last "stood aside." The action of the court in requiring the "stood aside" jurors to be recalled in the order in which they had been "stood aside" was in conformity to the practice which has long prevailed in this country and in England: 1 Thomp. on Trials, sec. 49n. We have never known the practice in this state to be otherwise. The action of the court, therefore, deprived the prisoner of no right; nor could it have done him any injury.

The second to fifth specifications, inclusive, are based on a misapprehension of the record. The order in which a trial shall proceed must be left largely to the discretion of the court. The prisoner having taken the stand in his own behalf was open to cross-examination by the commonwealth. He was recalled during the time the rebuttal testimony of the commonwealth was being offered, not to give evidence in rebuttal, as his counsel asserts, but for further cross-examination. The other matters complained of do not require special notice. There is no merit in either of them. Nor is there any merit in the sixth specification. In disposing of the motion for a new trial the learned

judge says the court's attention was not called to the alleged remarks of the district attorney at the time. Unless that is done remarks of counsel cannot be considered: Com. v. Windish, 176 Pa. 167. The remarks complained of are not properly on the record. They are embodied in the reasons for a new trial, but the discretion of the court in refusing a new trial is not reviewable in such circumstances as appear in this case: Alexander v. Com., 105 Pa. 1.

While in cases of conviction of capital offenses the fact of the separation of the jurors further than is necessarily required to enable them to perform their duties as such, and under the care of a sworn officer, creates a presumption of improper influence; but it is a presumption which the commonwealth may rebut by clear and satisfactory evidence: Moss v. Com., 107 Pa. 267. In this case, the evidence was amply sufficient for that purpose.

The action of the court in permitting private counsel to close the case for the commonwealth furnishes no ground for reversal. The general conduct of a trial is largely within the discretion of the judge presiding; and it is only when some abuse of that discretion is clearly shown, that an appellate court will interfere. Nothing of the kind appears in this case.

The subject of complaint in the eighth and last specification has already been noticed. The charge of the court in relation thereto was quite as favorable to the prisoner as he could reasonably ask.

Several of the assignments of error are destitute of merit; and, as already stated, there is nothing in any of them that would justify a reversal of the judgment. They are all overruled.

The judgment of the court below is affirmed, and it is ordered that the record be remitted for the purpose of execution.