## Commonwealth *v.* Anthony, Appellant.

*Criminal law—Murder—Murder of the first degree—Charge—Evidence—Cross-examination.*

1. A verdict of murder of the first degree was sustained where there was evidence to show that while the deceased and a third party were engaged in a fight the defendant heard the quarreling, came from a house some distance away, removed his coat, picked up a shovel, lifted the shovel with both hands and approaching the deceased from the back struck him a severe blow on the side of the head, from which blow deceased died.

2. In such case the court committed no error in refusing a point charging that there was no evidence to establish an intent to take life.

3. In such case the court committed no error in refusing to permit the attorney for the defendant to further cross-examine a witness produced by the Commonwealth in rebuttal to prove that the deceased had been seen at a specified time where such further cross-examination related to the location of other parties subsequent to the time testified to by the witness.

Argued May 14, 1917. Appeal, No. 123, Jan. T., 1917, by defendant, from sentence of Oyer and Terminer Cumberland Co., Feb. Sessions, 1917, No. 17, on verdict of murder of the first degree in case of Commonwealth of Pennsylvania v. James Anthony. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER and WALLING, JJ. Affirmed.

Indictment for murder.

The main facts appear in the following portion of the charge by SADLER, P. J.:

Now, you will consider all that was said as to these contradictions, whether they were as to essential facts, and whether the explanations made by Bigler, Walton and Hamlet on the stand were satisfactory. As we remember, they all admitted that they had stated that they did not know the man, but explained that they meant thereby that they did not know the name, and not that

they did not identify Anthony. You will remember, however, what was said.

In rebuttal, the Commonwealth offered evidence to show that Anthony's story was untrue. Daniel Huntsberger and William Rynard were called. They had charge of the bar on the nineteenth. They swore that Anthony did not come there and purchase liquor as he testified.

Joseph A. Weibley and Holmes Koser testified that Anthony was on the six o'clock trolley car in the evening, leaving for Carlisle. If they are correct, they contradict in part not only Anthony, but the story of Hall and Milly Ross.

Mr. Whitaker testified that he was not intoxicated, as he claimed, when he came to the commissary at one o'clock, and that his appearance and conduct so showed.

Clifford Woodson testified to seeing Anthony out at the water closet at the time Ury was removed on the wagon from the pump house, and Charles Hamlet testified to Josey Jones' statement to him that she had told James not to go down to the pump house, but that he had said he would not stand for any one attacking one of his color.

Briefly then, gentlemen, this is the testimony in chief, in defense and in rebuttal. I have not attempted to give it all, but you will remember every part.

There is a wide conflict. It will be for you to test the facts by considering the circumstances which surround the case—the possible interest of the parties—their credibility—the corroboration of the statements which they made, and to give credence where it belongs.

Now it seems to us that certain clear facts stand out prominently, though the facts are all for you.

First. Ury is dead. Second. He died as a result of a blow on the head delivered by a blunt instrument. Next, that Hamlet and Ury had been fighting, and Bigler and Walton were present and interfered. Next, that while scuffling, some colored man ran across the road, took

off his coat, crossed the coal pile, lifted the shovel with both hands and approaching Ury from the back, struck him a severe blow on the side of the head, so severe that the witness for the defense, Mary Gamble, heard the crack on her porch, at the red house and that the man ran back the same way, picked up his coat and made off. These facts are testified to with variations by witnesses on both sides.

The real conflict is—who was this man? Besides the dead man, six persons were present when the blow was delivered or saw it struck. Bigler, Mr. Miller, Mrs. Miller, Hamlet and Walton—all five of whom swore the man was Anthony, and Mary Gamble, who swears it was not. Testimony was offered to throw discredit on the identification of Hamlet and Walton, as you will remember, and of Bigler by showing that he said the man went out the other door, and that he did not know the man. But as we remember, no such contradictions were shown as to Miller and his wife, whose story is corroborated in many respects, other than the identification, and the statement of the colored woman, by witnesses on both sides. Were they correct or were they mistaken?

Now the defendant claims he did not commit the offense, being intoxicated in his room, and to his location there Hall, Milly Ross, Gracey Webster and Josey Jones also testify. If they are correct, then the others are wrong. It will be for you to say which story is correct.

Anthony's story as to his purchase of drinks is attacked by the testimony of Huntsberger and Rynard, his intoxication at one o'clock by Whitaker, his presence in the yard in the afternoon by Woodson, and in the trolley car in the evening by Weibley and Koser. And if Weibley and Koser are correct, they also contradict in part the stories of Milly Ross and Hall, who said Jim was in his room after six o'clock. Now somebody is wrong or mistaken, to use no harsher expression, who it is will be for you.

Verdict of guilty of murder of the first degree. Sen-

tence of death was subsequently passed.    Defendant appealed.

*Errors assigned* were as follows:

First. The court erred in not affirming without qualification, the defendant's third point.

The point and answer found in the charge of the court are as follows:

To constitute murder in the first degree in this case there must have been an actual intent to take the life of Michael Ury by the man who struck him with the shovel, and there is no evidence to establish such intent. The burden rests on the Commonwealth to show beyond a reasonable doubt that the killing was intentional and wilful.    In Pennsylvania the law presumes a murder no higher than the second degree, the burden resting on the Commonwealth to establish a higher grade of crime.

Answer: Refused as stated.    The point would be affirmed were it not for the phrase "there is no evidence to establish such intent."    This is a question for the jury under the evidence, and instructions which we will subsequently give you.

Second. The court erred in instructing the jury as follows:

Would the facts indicate that the blow was delivered with an intent to kill, and was deliberately delivered and with premeditation?    Is this shown by the acts of preparation in taking off the coat, approaching the back of the man to be attacked.

Third. The court erred in instructing the jury as follows:

Would the facts indicate that the blow was delivered with an intent to kill, and was deliberately delivered and with premeditation?    Is this shown by the acts of preparation in taking off the coat, approaching the back of the man to be attacked, with shovel upraised in both hands, and the delivery of a blow on the head so hard as to make it crack.

Fourth. The court erred in refusing to permit counsel for the defendant to continue in his cross-examination of Clifford Woodson, as follows (Record pp. 613, 614).

Q. He was there in the open?

A. Yes.

Q. Can you say how soon after that you saw Hamlet?

A. Yes.

Q. How long after?

A. I saw him about five minutes after that.

The Court: That is as far as you can go. He was called to show merely that he saw the defendant, who had said he was in his room at the time—that he had seen him at a specified time—as to what he saw when he met Anthony, we will allow him to testify, not beyond that.

Mr. Berg: Give us an exception.

The Court: Yes; if you put it in the shape of an offer.

Mr. Berg: It is intended to further interrogate the witness on the stand for the purpose of ascertaining the correctness of his story, and to attack his credibility.

By the Court: The witness having been called by the Commonwealth in rebuttal to contradict the statement of the defendant, Anthony, that he was in his room the whole of the afternoon, by showing at a certain time after the fight he was in the yard between the red and yellow houses, and having been called for that purpose alone, and the purpose of the present offer being to inquire as to the location of other parties subsequent to the time testified to by him, the testimony is refused, it not being proper cross-examination of the witness called in rebuttal for the purpose of contradicting a statement of the defendant as to his location in his room the whole of the afternoon. The movements of the witness after the time concerning which he was called to testify, would not be admissible in this cross-examination. Exception noted for the defendant.

Fifth. The court erred in entering the following judgment:

The sentence of the court upon you is that you shall suffer death by having passed through your body a current of electricity of sufficient intensity to cause death, and the application of such current must be continuous until you are dead, and the said punishment shall be inflicted as directed by the Act of June 19, 1913, P. L. 528.

*Herman Berg, Jr.,* for appellant.

*William A. Kramer,* with him *John D. Faller* and *George E. Lloyd,* District Attorney, for appellee.

PER CURIAM, June 30, 1917:

In the performance of the duty imposed upon us by the Act of February 15, 1870, P. L. 15, we have reviewed both the law and the evidence in this case, and find that the ingredients necessary to constitute murder of the first degree were proved to exist on the trial of the prisoner. The instructions complained of in the first, second and third assignments are free from error. The latitude asked for by the prisoner's counsel in the cross-examination of the witness called by the Commonwealth in rebuttal, was properly denied, for the reason given by the learned trial judge. The fifth and last assignment complains only of the judgment, which is now affirmed, with direction that the record be remitted for the purpose of execution.