## Commonwealth *v.* Blakeley, Appellant.

*Criminal law—Continuance—Discretion of court—Absence of witness—Physical disability—Cumulative evidence.*

1. In a murder trial an application for continuance on the ground of the absence of a witness, is within the sound discretion of the court, and the refusal of such application, is not a ground for reversal of a conviction where no abuse of such discretion is shown.

2. If it appears that the witness is in a physical condition which renders it impossible for her to attend the trial, but that her testimony would only be cumulative, would not show defendant's mental condition at the time of killing, and there is nothing to indicate

the possibility of her attendance at a later period, a continuance is rightly refused.

*Criminal law—Murder—Instrument—Club—Intention—Charge —Court and jury.*

3. Primarily the determination of the character of a weapon used in a killing, whether deadly or not, is for the court, but it is always for the jury to say, from all the evidence adduced, whether an intention to kill was present in the mind of defendant.

4. The nature of a weapon must be considered with the manner of its application and its effect, and, from the combined circumstances, there may appear an intention to kill.

5. It is not error for the court to charge that a person who uses upon the body of another at some vital part, with a manifest intention to use it upon him, a deadly weapon, such as a club, must, in the absence of qualifying facts, be presumed to know it is likely to kill, and knowing this must be presumed to intend the death which is the probable and ordinary consequence of such an act.

*Criminal law — Murder — Charge — Appeals — Assignments of error—Excerpts from charge.*

6. An excerpt from the charge in an assignment of error on an appeal in a murder case will not be considered as a ground for reversal of conviction, where the portions of the charge preceding and following the excerpt indicate the thought intended to be conveyed, and the passage as a whole could not be said to have misled the jury.

*Criminal law—Murder—Defense of home and family—Killing at a distance from house.*

7. While it is true that a man has a right to defend himself and family when he is attacked in his home, this has no application to a killing which took place a considerable time after a quarrel in defendant's house, and at a point eight or nine hundred feet therefrom.

*Criminal law—Murder—Jury—Separation of jury—Presumption.*

8. Where a separation of a jury occurs during a murder trial, a presumption arises that some undue influence may have been effective to the prejudice of defendant, yet the Commonwealth may rebut this, and, if no real injury appears, a conviction will not be set aside for this reason.

9. A conviction will not be set aside where the jury went in an automobile trip on a Sunday afternoon in cars owned and driven by some of their own number, accompanied by tipstaffs; nor where

they were permitted to play pool in a locked room in a hotel where they were lodging with no one else present except tipstaffs; nor where one of their number went home for clothes, in care of the proper official, and spoke with no one but his wife, and that on a subject not connected with the trial.

*Criminal law—Murder—Appeals—Duty of appellate court—Act of February 15, 1870, P. L. 15.*

10. It is the duty of the appellate court under the Act of February 15, 1870, P. L. 15, on an appeal from a conviction of murder of the first degree, to review both the law and evidence in the case, and determine whether the ingredients necessary to a conviction of murder of the first degree were properly proven.

Argued March 20, 1922. Appeal, No. 33, Oct. T., 1922, by defendant, from judgment of O. & T. Butler Co., June T., 1921, No. 3, on verdict of murder of the first degree, in case of Commonwealth v. H. A. Blakeley. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Indictment for murder. Before REIBER, P. J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree on which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were various rulings and instructions, sufficiently appearing by the opinion of the Supreme Court, quoting record.

*William H. Martin* and *S. F. Bowser,* for appellant.— A continuance should have been granted: Scrimpton v. Bartolet, 155 Pa. 638.

Some weapons are so clearly deadly when used under particular circumstances that the court may declare them so, as a matter of law, such for instance as a pistol, a gun, an axe, a knife, a sword-dagger, a bayonet and such weapons as are not infrequently used to produce death of animals or man and which is adapted to produce

it.   A club, generally speaking, is not classed among such weapons.

Separation of the jury was improper: Peiffer v. Com., 15 Pa. 468; Com. v. Fisher, 226 Pa. 190; Com. v. Eisenhower, 181 Pa. 470.

A man may defend himself and even commit a homicide for the prevention of any forcible and atrocious crime, which if completed would amount to a felony: Logue v. Com., 38 Pa. 265; Tiffany v. Com., 121 Pa. 165.

*James O. Campbell,* with him *Samuel Walker* and *Albert C. Troutman,* for appellee, cited, as to continuance: Com. v. Carson, 3 Phila. 219; Com. v. Winnemore, 1 Brewster 356; Com. v. Bezek, 168 Pa. 603.

As to self-defense: Com. v. Hare, 2 Clark 467; Com. v. Mitchka, 209 Pa. 274; Com. v. Breyessee, 160 Pa. 451; Tiffany v. Com., 121 Pa. 165.

As to separation of jury: Moss v. Com., 107 Pa. 267; Com. v. Gearhardt, 205 Pa. 387.

OPINION BY MR. JUSTICE SADLER, April 17, 1922:

Defendant and Kummer had been engaged in litigation, which terminated in the imposition of costs upon both parties, and, as a result, the feeling between them was bitter.   The former made threats to injure the latter, and some three months later did kill him, though he claimed this was done in self-defense, and while intoxicated and insane.   On the evening of April 2, 1921, the parties met at a dance, and from there went to the home of Blakeley, in whose house the conduct of the deceased was most offensive, and ended in a fight soon after in the yard, in the course of which Kummer was more or less injured; he then left.   Some time following his departure, defendant went to the dwelling of one Harvey, ostensibly to secure matches, and with his neighbor returned in the direction of his own residence.   When 853 feet distant therefrom, he discovered Kummer, who, in crossing a fence, had caught his foot between a rail and

a tree, and was in a helpless condition. Taking, with both hands, a club about three feet long and one and one-half inches in diameter, which had been made use of in the earlier affray, he attacked the prostrate man, inflicting blows upon his head, which, the autopsy showed, caused his death. The facts as narrated are practically without denial.

Blakeley was arrested on the following morning, and on June 7th was indicted by the grand jury. The trial was fixed for the succeeding week and proceeded, after the overruling of a motion to quash the array of grand and petit jurors, as well as an application for a continuance. A verdict of guilty of murder of the first degree was rendered, and, a request for a new trial and arrest of judgment having been refused, sentence was imposed. It is now averred various errors were committed, making necessary the reversal by us of the final judgment entered.

Complaint is made, in the first two assignments, of the refusal of the court to grant a delay of the hearing when the case was called. It was then suggested the mother of defendant was in such physical condition as to make her presence impossible, and her evidence, as to an injury received by defendant in youth, was necessary as bearing upon his mental condition. The court was also advised of facts which clearly showed that any statements she could make would be merely cumulative of testimony to be offered by other members of the family, who actually were called during the course of the trial. Further, no proof was submitted to show the possibility of her attendance at a later date, or that she had knowledge of his capacity to distinguish between right and wrong at the time of the murder, not having lived with him for many years. The application was, therefore, refused by the trial tribunal in the exercise of its discretion, and we cannot say, after an examination of the record, there was an abuse which would justify a reversal: Com. v.

Haslett, 16 Pa. Superior Ct. 534. The assignments complaining of this action, must, therefore, be overruled.

It is insisted defendant was prejudiced by certain instructions to the jury. In discussing the question of proof of an intention to kill, essential to a conviction of murder of the first degree, the court said: "A person who uses upon the body of another, at some vital part, with a manifest intention to use it upon him, a deadly weapon, such as a club, must, in the absence of qualifying facts, be presumed to know it is likely to kill; and, knowing this, must be presumed to intend the death which is the probable and ordinary consequence of such an act." This portion of the charge, as well as that referred to in assignment 3, is practically a repetition of the words found in Com. v. Drum, 58 Pa. 9, 17, with the difference that there a club was not mentioned as a weapon. It is now said to so declare was error, since the character of the instrument producing the death, from the use of which an intention might be presumed, was solely a matter for the jury, to be considered in connection with other facts disclosed. Taking the charge as a whole, we are not convinced the court fell into error. The club did cause the killing, and in that sense certainly was deadly, and, under similar circumstances, approval has been given to a charge averring an inference of intent from the use of a like instrument; thus, where a shovel was used (Com. v. Anthony, 259 Pa. 65; Onofri v. Com., 20 W. N. C. 264; Com. v. Toth, 145 Pa. 308), a stick with a strap (Com. v. Murray, 2 Ash. 41), or a club (Com. v. Washington, 202 Pa. 148).

The implement in itself, as an indication of a purpose to effect the result attained, is not separable in any case from its use. A weapon ordinarily may be employed in such a manner that death is improbable. Its nature must be considered with the manner of its application and its effect, and, from the combined circumstances, there may appear an intention to kill. Primarily, the determination of the character of the weapon, whether

deadly or not, is for the court (21 Cyc. 1027; 21 L. R. A. (N. S.) 499 note), but it is always for the jury to say, from all the evidence adduced, whether an intention to kill was present in the mind of the defendant, and this right to so declare was not withdrawn from it by any statement made by the learned court below in its charge. The third and fourth assignments are therefore overruled.

Again, it is objected that proper instructions were not given as to the insanity of defendant. The portion of the charge referred to in the sixth assignment, if standing alone, might furnish cause for reversal, for there it is stated: "If, on the other hand, you are not so satisfied as to [insanity] then it is your duty to determine the degree of the guilt of the defendant. If you are satisfied, beyond a reasonable doubt, that the defendant struck the deceased with the club, then he is guilty of murder." But an examination of what precedes and follows clearly indicates the thought intended to be conveyed, and, taken as a whole, we cannot say the jury may have been misled.

No harm was done defendant in the refusal to answer the ninth and tenth points, which, in themselves, stated correctly abstract propositions of law, but assumed facts not justified by the evidence of record. It is undoubtedly true that a man has the right to the peaceful possession of his own house, and, when he is there attacked, may defend himself and his family, but it here appeared the deceased, after the controversy at the home and in the yard, had departed. A very considerable period of time intervened before the assault which resulted in death, and this occurred, without any new provocation, at a point eight or nine hundred feet distant. Under the circumstances disclosed, the court properly refused to consider the requests, and the seventh and eighth assignments must, therefore, be overruled: Com. v. Danz, 211 Pa. 507; Com. v. Calhoun, 238 Pa. 474; Com. v. Henderson, 242 Pa. 372. Nor can we see that any error appears in the portion of the charge referred to in the fifth assignment,

in which complaint is made of the statement to the jury that there was not sufficient justification shown for the killing of Kummer, under the testimony presented.

Assignments 9, 10 and 11 are based upon the refusal of a new trial in view of the separation of the jury after being sworn, but prior to submission of the case to it for determination. During the course of the trial, which lasted ten days, the members were permitted to take an automobile ride on an intervening Sunday afternoon. The cars were driven by jurors who owned them, and tipstaffs accompanied. During the trip, it appeared, someone called while they were passing, but the remark made could not be heard, and is not recorded. At one time, the entire body visited a pool room in the hotel where they were lodged; no one else was present, the door was locked, court officers were in control the whole period, and it is not claimed any outsider had access to the room while they were there. Again, it appears one of the jurors was permitted to go home, in care of the proper official, to secure some clothes, and though he then spoke to his wife, it was not with reference to the pending case. Frequently this court has taken occasion to condemn the separation of jurors after being empanelled in capital cases (Com. v. Fisher, 226 Pa. 190; Com. v. Insano, 268 Pa. 1), and such conduct is not to be approved, even with the consent of defendant: Peiffer v. Com., 15 Pa. 470. When it occurs, a presumption arises that some undue influence may have been effective to the prejudice of defendant; yet the Commonwealth may rebut it, and, if no real injury is shown, a conviction will not be set aside for this reason: Moss v. Com., 107 Pa. 267; Com. v. Eisenhower, 181 Pa. 470; Com. v. Gearhardt, 205 Pa. 387; Com. v. Insano, supra. A reading of the depositions submitted leads to the conclusion that no harm was here done to defendant, and we cannot say there was any reversible error in refusing to grant a new trial on the ground stated. The assignments of error relating thereto are overruled.

As is our duty, imposed by the Act of February 15, 1870, P. L. 15, we have reviewed both the law and evidence in this case, and find the ingredients necessary to a conviction of murder of the first degree were properly proven. We see no error in the conduct of the trial, or in the refusal of the learned court below to grant a rehearing; the sentence passed, complained of in the twelfth assignment should, therefore, be sustained.

The judgment of the court below is affirmed and the record is remitted for the purpose of execution.