## Commonwealth *v.* Boyd, Appellant.

*Criminal law—Criminal procedure—Murder—Trials—Position of district attorney in court room—Right of defendant to consult with counsel during trial—Right to sit at counsel table.*

1. On appeal from a conviction and sentence of death in a murder case, an assignment of error which complains that the trial judge refused upon request to require the district attorney to occupy a place upon the floor of the court room where other counsel sat, but allowed him to sit in the space between the bench and the bar, during the trial, will be overruled, where there is nothing on the record to show the positions in the court room occupied by the respective counsel, where the district attorney is not charged with unfair or improper conduct, and where it does not appear

that the defendant was prejudiced as a result of the refusal·of his request.

2. While in every criminal trial, the accused has a common law right to counsel, and this right may not be abridged by any rule or regulation which would operate to hinder and obstruct free consultation between the accused and his counsel, the refusal of the trial judge, in a murder case to permit the defendant to sit by his counsel, so that the defendant was compelled to occupy a small enclosed place, about six or eight feet away from the counsel table, was harmless error where no defense on the merits was made, where the statements of the Commonwealth's witnesses were not challenged, and where it did not appear that the defendant was prejudiced by the action of the court.

*Indictments—Amendment after arraignment and plea—Act of March 31, 1860, P. L. 427, Section 11—Evidence—Commonwealth's evidence—Proper questions.*

· 3. Where in such cases the indictment charged the killing of a named woman by a man who was also named, but, by a clerical error, the personal pronoun used in referring to each was of the wrong gender, an amendment after arraignment and plea, transposing the words "him" and "her" and putting each in the proper place was properly allowed under Section 11 of the Act of March 31, 1860, P. L. 427, providing for the amending of indictments.

4. Where in such case the defendant's statement immediately upon his arrest to the effect that he had killed the girl because he was crazy in love with her and had been drinking, was offered in evidence, the court properly allowed the Commonwealth to inquire of a witness who testified to having seen the defendant immediately following the shooting, whether according to his observation, the defendant was intoxicated, and the defendant's rights were sufficiently protected by a full and adequate reference to his statement in the charge of the jury.

· *Murder—Trials—Charge to jury—Murder of the first degree.*

5. Where in such case it appeared that defendant had accompanied deceased to a drinking saloon, that while the two were seated at a table, drinks having been served, the defendant fired five pistol shots into the person of deceased, killing her almost instantly, the trial judge made no error in charging the jury to the effect that one who takes the life of another with a deadly weapon must in the absence of qualifying facts be presumed to have intended death, and sufficiently protected defendant's rights by adding a qualification that there must be sufficient time to deliberate and fully to form the conscious purpose of killing.

Argued Sept. 28, 1914. Appeal, No. 268, Jan. T., 1914, by defendant, from judgment of O. & T., Philadelphia Co., October Sessions, 1913, No. 642, on verdict of guilty of murder of the first degree, in case of Commonwealth v. James Boyd. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Indictment for murder. Before KINSEY, J.

The opinion of the Supreme Court states the facts.

The jury found a verdict of guilty of murder of the first degree, upon which sentence of death was passed. Defendant appealed.

*Errors assigned* were various assignments referred to in the opinion of the Supreme Court and the fifth assignment which was as follows:

5. That the learned trial judge erred in his charge to the jury wherein he stated......as follows:

"The law is that one who so uses upon the body of another, at some vital part, with a manifest intention to use it upon him, of a deadly weapon, such as a pistol, must, in the absence of qualifying facts, know that his action is likely to kill, and, knowing this, must be presumed to intend the death, which is the probable and ordinary consequence of such an act. And he who so uses a deadly weapon, without sufficient cause of provocation, must be presumed to do it wickedly and from a bad heart. Therefore, one who takes the life of another with a deadly weapon, and with a manifest design thus to use it upon him, with sufficient time to deliberate and fully to form the conscious purpose of killing, without any sufficient reason or cause of extenuation, is guilty of murder in the first degree."

*Edwin M. Abbott,* for appellant.

*Wm. Findlay Brown,* Assistant District Attorney,

with him *Samuel P. Rotan,* District Attorney, for appellee.

OPINION BY MR. JUSTICE STEWART, October 26, 1914:

At the solicitation of the defendant—a colored man and married—a young colored woman, Bertha Ann Fisher, with whom the defendant had for some time maintained illegal relations, accompanied him to a drinking saloon in the City of Philadelphia on the afternoon of 26th August, 1913. While the two were there seated at a table, drinks having been ordered and served, the defendant discharged five pistol shots in rapid succession into the person of Bertha Ann Fisher from the effect of which she died almost instantly. The defendant forthwith proceeded to reload his pistol, and having done this walked out of the saloon. He then started to run and was pursued. When about to be seized he fired at the officer in pursuit some two or three times, wounding him seriously. He was subsequently overtaken and captured, and when taken to the station, upon being asked why he had killed the girl, replied that he was crazy in love with her and had been drinking all day. Such in brief was the testimony on part of the Commonwealth, and it was the only testimony offered, the defendant himself declining to take the stand. Upon this state of the evidence any other verdict than the one rendered of murder in the first degree would have been in plain disregard of legal requirements. The offense committed was clearly murder, and just as clearly murder of the highest degree.

The assignments of error when considered in the light of the established facts are too unsubstantial to call for serious discussion. The first two relate to the conduct of the trial. It is complained in the first, that the court refused upon request to require the district attorney to occupy a place upon the floor of the court room where other counsel sat, and permitted him to sit in the space between the bench and the bar, while conducting the

trial; and in the second, that the court denied defendant's request that he, the prisoner, be allowed to sit with his counsel at the counsel table during the trial. As to the first, it is only necessary to say that there is nothing in the record which informs us as to the position occupied by the respective counsel in the court room; with the further observation, that accepting the statement in illustration made by counsel upon the argument, we see nothing in the fact that would tend in any way to disturb orderly procedure, or work prejudice to the defendant. Upon the argument appellant's counsel disclaimed, in emphatic way, any purpose to charge by the assignment that the prosecuting officer was guilty of any unfair or improper conduct, whether by taking advantage of his position near the bench, (if any advantage resulting from such circumstances can be conceived), or otherwise. This reduces the assignment to a mere complaint against a custom which admittedly has long obtained in the criminal courts of Philadelphia, and which, so far as our knowledge extends, has up to this time escaped adverse criticism. It is not for us to disturb it.

But for the facts of this case the second assignment would call for more serious consideration. In every criminal trial the accused has a common law right to counsel, and this right may not be abridged by any rule or regulation which would operate to hinder and obstruct free consultation between the accused and his appointed counsel, especially at the critical moment when his alleged guilt is being made the subject of inquiry by the jury sworn to make a true deliverance. At such time the accused has a right to sit with his counsel where he can have equal opportunity to hear the testimony of the witnesses, and absolute freedom to assist by suggestion and information in his own defense. Here the appellant was assigned in the court room the usual place occupied by prisoners charged with felony when on trial, a dock or small enclosed place of that

general character, about six or eight feet away from the counsel table. This was in accordance with a general custom which, as we are given to understand, prevails in the criminal courts of Philadelphia. The fact that such custom prevails calls for no comment here, except to say that as we understand the purpose—and we think the purpose apparent from the general appearance of the dock or enclosure as described to us—it could not be restraint or confinement of the prisoner in order to secure his appearance at the trial, but simply a segregation, with a view to secure orderly trial; and this being so, it is not a custom which in itself infringes upon the prisoner's rights, except as he is denied the privilege, when he has asked it, of leaving the dock and taking his place beside his counsel while his case is being heard. Appellant's argument is directed mainly against the custom of maintaining a dock or such enclosure; but with that we have nothing to do, so long as the custom does not interfere with giving to the accused a fair and impartial trial. Did the observance of it in this case so result? It is not pretended that it did as matter of fact. It was defendant's right to sit with his counsel if he desired, and the trial judge should have recognized his right so to do. If there were considerations peculiar to the defendant sufficient to move the court to deny him the privilege, these should have been stated and put upon the record so that their reasonableness might be judged; but taking into consideration that no defense was interposed, that the facts as testified to by the Commonwealth's witnesses, if accepted as true, established defendant's guilt beyond question, and that their correctness was unchallenged, it is impossible for a mind not disturbed by excessive zeal to see in what respect the defendant was prejudiced by the court's refusal of the request. Upon counsel's own showing nothing more serious resulted than inconvenience to himself in being obliged to pass from the counsel table a few feet to where defendant sat when he desired to confer

with his client, except,—and this is what has been gravely argued to us—, the mere conjecture that the jury, seeing defendant so restricted as to place, might derive the impression that he was already under some sort of judicial condemnation. The assignment has this conjecture to rest upon but nothing more. Holding that in all such trials it is the accused's right to a seat by his counsel, we would sustain the assignment were it not made so apparent that in this case the refusal of the court was harmless error.

The third assignment complains of a mere formal amendment of the indictment after arraignment and plea. It is only necessary to indicate the amendment to show how formal it was. The indictment charged the killing of a woman, naming her, by a man also named, but by clerical error the personal pronoun used in referring to each was of the wrong gender. The amendment simply transposed the words "him" and "her," putting each in its proper place. It was properly allowed under statutory provision.

The defendant's statement made immediately upon his arrest to the effect that he had killed the girl because he was crazy in love with her, and had been drinking, was introduced by the Commonwealth. Because of the statement that he had been drinking, it was allowed the Commonwealth to inquire of a witness who testified to having seen the defendant immediately following the shooting, whether according to his observation the defendant was intoxicated. The fourth assignment complains of this as error. The question was properly allowed under the ruling in Com. v. Eyler, 217 Pa. 512, and the defendant was given the benefit of a full and adequate reference to his statement in the charge of the court.

It is not necessary to recite here the instruction of the trial judge in his charge in regard to the presumption which arises where one uses upon the body of another, at some vital part, a deadly weapon, with manifest pur-

pose to take life. It is quite enough to say that it corresponds almost literally with the law as laid down in Com. v. Drum, 58 Pa. 9. The assignment which complains of the instruction overlooks the expressed qualification in the charge of manifest design to take life, with sufficient time to deliberate and form such purpose.

Upon a review of the whole case we find no error which would justify a reversal of the judgment. The assignments are overruled; the judgment is affirmed, and the record is remitted for purpose of execution.