352 A.2d 30
**COMMONWEALTH of Pennsylvania**
v.
**Roy J. O'SEARO, Appellant.**

Supreme Court of Pennsylvania.
Argued June 23, 1975.
Decided Jan. 29, 1976.

226

Herman M. Rodgers, Rodgers, Marks & Perfilio, Sharon, for appellant.

Joseph J. Nelson, Dist. Atty., Robert F. Banks, Asst. Dist. Atty., Mercer, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROB-ERTS, POMEROY, NIX, and MANDERINO, JJ.

## OPINION

NIX, Justice.

Appellant Roy O'Searo was indicted for murder and involuntary manslaughter. He was tried before a jury and found guilty of murder in the first degree. After timely motions for a new trial and arrest of judgment were denied and he was sentenced, appellant filed this appeal pursuant to the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202, 17 P.S. § 211.202(1).

The death in the instant case resulted from a shooting which occurred in a public restaurant during the course of an argument between appellant, the decedent and a third individual. Appellant, who had some time earlier undergone serious open-heart surgery, maintained that he produced the weapon in an effort to stop the struggle that had begun. It was his contention that after he drew the revolver, someone grabbed his hand causing it to discharge accidentally.

The first assignment of error is the trial court's exclusion of the testimony of the proffered defense witness Frank J. Pizzat, a clinical psychologist. Appellant argues in his brief, "Dr. Pizzat was offered to substantiate and corroborate the defendant's contention that he harbored no ill will towards the victim, that he had no intention of harming the victim, that the defendant during the scuffle became fearful of a heart attack and drew the gun in order to get the people away from him." It is asserted that the reasoning of *Commonwealth v. Mc-Cusker*, 448 Pa. 382, 292 A.2d 286 (1972) forces the conclusion that this testimony should have been admitted and its rejection justifies an award of a new trial.

Unlike *McCusker, supra,* the testimony sought to be admitted did not touch upon the psychological likelihood of appellant's behavior under a given stimulus. Nor, did the evidence address the capacity to form the specific intent to kill. Cf. *Commonwealth v. Graves,* 461 Pa. 118, 334 A.2d 661 (1975); *Commonwealth v. Light,* 458 Pa. 328, 326 A.2d 288 (1974). It is clear as noted by the learned court below that the only purpose of this offer was to buttress the credibility of the defendant as to his version of the critical events.

■ Expert testimony is permitted only as an aid to the jury when the subject matter is distinctly related to a science, skill, or occupation beyond the knowledge or experience of the average layman. McCormick, Handbook on the Law of Evidence, § 13, (2nd ed. 1972); *Commonwealth v. Newsome,* 462 Pa. 106, 337 A.2d 904 (Filed 1975); *Commonwealth v. Hoss,* 445 Pa. 98, 283 A.2d 58 (1971). Where the issue involves a matter of common knowledge, expert testimony is inadmissible. *Collins v. Zediker,* 421 Pa. 52, 218 A.2d 776 (1966).

■■ Traditionally, we have recognized not only the jury's ability to determine the credibility of the witnesses but also we have placed this determination within their sole province. *Commonwealth v. Hampton,* 462 Pa. 322, 341 A.2d 101 (1975); *Commonwealth v. Murray,* 460 Pa. 605, 334 A.2d 255 (1975); *Commonwealth v. Oates,* 448 Pa. 486, 295 A.2d 337 (1972); *Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972). To permit psychological testimony for this purpose would be an invitation for the trier of fact to abdicate its responsibility to ascertain the facts relying upon the questionable premise that the expert is in a better position to make such a judgment. Our research has failed to reveal any authority for this proposition nor has appellant been able to supply either authority for or persuasive arguments in support of such a position. We do not believe that a

concept as fundamental to our law as trial by jury of one's peers can be cavalierly abandoned. We hold that the learned trial court was correct in excluding the proffered evidence.

 Appellant's next assignment of error below is that the Commonwealth withheld evidence favorable to appellant in violation of the mandate of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1962). Appellant asked the Commonwealth to produce the coat it seized from him on the night of the incident. The Commonwealth failed to do this. Appellant maintains this was prejudicial because there was contradictory testimony from Commonwealth witnesses regarding how appellant secured the gun in a pocket of the coat. We fail to see, however, how this evidence is favorable or material to appellant's defense of accident. Appellant took the stand and admitted that he had the gun in his hand during the struggle and that it was only later in the struggle that someone grabbed his hand causing the gun to discharge. Thus, how appellant had the gun secured in a pocket of his coat prior to his taking it out during the affray, had no significant relevance on the issue as to the cause of the weapon's discharge since it was never suggested that the gun was accidentally fired as it was being removed from the coat. As emphasized in the United States Supreme Court's decision in *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972),

"The heart of the holding in Brady is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence. These are the stan-

dards by which the prosecution's conduct in *Moore's* case is to be measured."

408 U.S. at 794–95, 92 S.Ct. at 2568.

On the facts of this record we do not believe that this evidence was material to the guilt of appellant or to his defense of accident. Consequently, the Commonwealth's failure to produce the coat did not violate the mandate of *Brady v. Maryland, supra.*

■ Appellant next contends that the lower court erred in charging the jury that on recall in the closing of his case the appellant for the first time testified that someone had grabbed his hand. The trial was recessed over the weekend and when the defense counsel continued its case on Monday morning defense counsel asked:

"Mr. O'Searo, when you were last on the stand I neglected to ask you what had caused that gun to be discharged, will you tell the jury.

Yes. The last time I saw the gun, it was right here on Jake's shoulder. Something grabbed my hand and pulled it and that's—the next thing I know a shot went off."

Although the challenged statement in the charge could possibly have been interpreted by the jury as an indication that appellant had created a fabrication over the weekend, no exception was taken to this portion of the judge's charge. Although appellant concedes that no exception was taken to this charge he claims it was fundamental error and, thus, should be considered on appeal. This argument, however, ignores our recent decisions which have firmly rejected the doctrine of basic and fundamental error. *Commonwealth v. Belcher*, 462 Pa. 206, 340 A.2d 435 (1975); *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974); *Dilliplaine v. Lehigh Valley Trust Company*, 457 Pa. 255, 322 A.2d 114 (1974); Pa. R.Crim.P. 1119(b), 19 P.S.Appendix. Since no exception

■■■■■■■■■■■■■■■■■■■■■■■■

was taken to the charge, we are precluded from considering appellant's claim.

■■■ Appellant also maintains that the lower court erred in failing to grant appellant's point for charge number three without modification and for refusing to grant appellant's point for charge number four.[1] Our recent decisions make it clear that the trial court is not required to accept the precise language of the point submitted by counsel. *Commonwealth v. Boone*, Pa., 467 A. 2d —— (Filed October 1975); *Commonwealth v. Mc-Comb*, 462 Pa. 504, 341 A.2d 496 (1975); *Commonwealth v. Rose*, 449 Pa. 608, 297 A.2d 122 (1972); *Commonwealth v. Nelson*, 396 Pa. 359, 152 A.2d 913 (1959).

As we stated in *Commonwealth v. McComb, supra:*

"Additionally, the trial court is not required to accept the language of the point submitted by counsel but rather is free to select its own form of expression. The only issue is whether the area is adequately, accu-

---

1. Appellant's point for charge number three was:
 "The defense in this case is that of an accident. The defendant in his testimony stated that as he drew his gun to keep people away from him because of his physical condition someone grabbed the gun and that it discharged. If the jury believes that the discharge of the gun was accidental the jury should acquit the defendant. Accidental killing is not such a defense as throws on the accused the burden of proving it by a preponderance of evidence. It still remains the duty of the Commonwealth to prove that the killing, though done with a deadly weapon, was not intentional or wilful. When the evidence, taken as a whole, raises a reasonable doubt in the jury's mind as to whether the killing was accidental or intentional, that doubt must be resolved in favor of the defendant."
 The court modified this by deleting the first two sentences. Appellant's point for charge number four was:
 "If you find that while the defendant held his gun in a threatening attitude toward Gadola, that Gadola or some other person seized the gun and in doing so without any action on the part of Roy O'Searo and without any intention on the part of Roy O'Searo the gun was discharged and shot and killed Gadola, then you will be justified in determining that it was accidental; in fact, it would be your duty to determine that it was accidental on the part of Roy O'Searo if the gun was discharged entirely through the action of someone other than O'Searo."

rately and clearly presented to the jury for their consideration. Compare, *Commonwealth v. Nelson*, 396 Pa. 359, 366, 152 A.2d 913, 917 (1959); *Commonwealth v. Clanton*, 395 Pa. 521, 526, 151 A.2d 88, 91 (1959)." 462 Pa. at 509, 341 A.2d at 498.

The trial court fully and accurately explained the subject of an accidental killing and therefore did not abuse its discretion in rejecting requested point of charge number 4 and modifying requested point of charge number 3.

Lastly, appellant challenges that portion of the court's charge relating to the inference that may be drawn by the trier of fact from the intentional use of a deadly weapon on a vital part of the body of another human being. The trial court instructed the jury:

"Now, circumstantial evidence is proof directed to the attending circumstances. That is, evidence which by influence proves the principal fact by a showing of the surrounding circumstances, the existence of which forms a foundation from which the existence of the principal facts be concluded by the process of reasoning. Many people mistakenly have the idea that circumstantial evidence is not good evidence. It certainly is if it meets these requirements. Most crimes are committed by stealth at night, in darkness, with no evidence except circumstantial evidence. Therefore, if the circumstances by the influence on your judgment forms a foundation from which the principal fact can be concluded, it's good evidence, by a process of reasoning.

Let me give you an obvious example. One of the material elements that the Commonwealth must establish beyond a reasonable doubt for second degree murder is malice. One of the principal elements that must be established for first degree murder is premeditation. The Commonwealth attempts to establish beyond a reasonable doubt to your satisfaction that the defendant aimed or at least pointed, I can't say aimed, pointed

the gun at the head of the victim and fired it. Now those are circumstances from which the Commonwealth asks you to conclude by a process of reasoning that the defendant did it with malice and that he did it with premeditation. Now, does that prove it or not? That's for your determination. Now, let me hasten to add that the Commonwealth doesn't rely solely on that, that they claim that they have other evidence, such as these declarations made from about April of the same year down to this event. They claim that they have evidence of his pointing the gun while it was on the bar . . . and they are saying, take all that together and use it with the circumstantial evidence and come to your conclusion. Now, is that proper? If you find those facts to be such, yes, that's proper evidence and can be considered. If you don't find the facts to be such, then you disregard it. Bear in mind that the Commonwealth must prove its case, each and every material element of each offense beyond a reasonable doubt."

█ Appellant asserts that although a trier of fact may properly infer the existence of a specific intent to kill from the fact that the actor used a deadly weapon on a vital part of the body, the court erred in suggesting that the jury could also find that the conduct was premeditated. As framed by appellant, the argument is totally without merit. The term "specific intent to kill" is a phrase that has been developed by the courts of this jurisdiction to express the state of mind which characterizes the intent which accompanies a killing which was willful, deliberate and premeditated, as required by the statute.[2]

"Apart from the felonious killings which are made murder in the first degree by statute because perpe-

2. Act of June 24, 1939, P.L. 872, § 701; 1959, Dec. 1, P.L. 1621, § 1, as amended, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973, 18 Pa.C.S. § 2502.

trated by means of poison or by lying in wait or committed in the perpetration of or the attempt to perpetrate one of the statutorily enumerated felonies (Act of June 24, 1939, P.L. 872, Sec. 701, 18 P.S. § 4701), 'the main distinction of murder in the first from that of the second degree' lies in the specific intent to take life required for the former. *Commonwealth v. Iacobino* [319 Pa. 65, 178 A. 823], supra; *Commonwealth v. Robinson*, 305 Pa. 302, 308, 157 A. 689; *Commonwealth v. Gibson*, 275 Pa. 338, 342, 119 A. 403. Such intent supplies the qualities of willfulness, deliberation and premeditation otherwise essential, by the statute, to murder in the first degree."

*Commonwealth v. Jones*, 355 Pa. 522, 525–526, 50 A.2d 317, 319 (1947).

Thus, it is quite proper to use either the statutory language or the phrase developed by our Courts interchangeably for expressing the same concept.

■ Although inartfully framed, we believe the intended thrust of this argument was to challenge the legitimacy of the inference to supply the presence of the intent required in a non-felony first degree murder charge. We have frequently had occasion to state that the presence of a specific intent to kill is a distinguishing feature of a non-felony murder of the first degree.

" 'In Pennsylvania, the common law crime of murder is divided into two degrees, and murder of the *second* degree includes every element which enters into first degree murder except the intention to kill: *Commonwealth v. Divomte*, 262 Pa. 504, 507, 105 A. 821. When an individual commits an act of gross recklessness for which he must reasonably anticipate that death to another is likely to result, he exhibits that "wickedness of disposition; hardness of heart; cruelty; recklessness of consequences and a mind regardless of social duty" which proved that there was at that time

in him "that state or frame of mind termed malice." ' "
*Commonwealth v. Bowden,* 456 Pa. 278, 284, 309 A.2d
714, 717 (1973) quoting from *Commonwealth v. Malone,* 354 Pa. 180, 183, 47 A.2d 445, 447 (1946).

See also, *Commonwealth v. Bricker,* 458 Pa. 367, 371, 326
A.2d 279, 281 (1974); *Commonwealth v. Mosley,* 444 Pa.
134, 139, 279 A.2d 174, 177 (1971); *Commonwealth v.
Hornberger,* 441 Pa. 57, 61, 270 A.2d 195, 197 (1970);
*Commonwealth v. Ewing,* 439 Pa. 88, 91, 264 A.2d 661,
662 (1970); *Commonwealth v. Markle,* 394 Pa. 34, 37,
145 A.2d 544, 545 (1958); *Commonwealth v. Alston,* 456
Pa. 128, 129, 317 A.2d 229, 231 (1947). Our cases have
permitted the fact that an actor uses a dangerous weap-
on on a vital part of the body of another human being to
justify a jury finding, 1) that the actor possessed the
requisite malice required in common law murder, *Com-
monwealth v. Caye,* 465 Pa. 98, 100, 348 A.2d 136, 137
(1975); *Commonwealth v. Boyd,* 463 Pa. 343, 344 A.2d
864 (1975), and 2) that the act was committed pursuant
to a specific intent to kill. *Commonwealth v. Jackson,*
457 Pa. 237, 324 A.2d 350 (1974); *Commonwealth v.
Hornberger, supra; Commonwealth v. Alston, supra;
Commonwealth v. Jones, supra; Commonwealth v. Green,*
294 Pa. 573, 144 A. 743 (1929).

One of the earliest formulations of this dual purpose
inference is found in the charge given to the jury and
approved by this Court in the landmark decision of *Com-
monwealth v. Drum,* 58 Pa. 9 (1868) :

"The proof of the intention to kill, and of the dispo-
sition of mind constituting murder in the first degree,
under the Act of Assembly, lies on the Commonwealth.
But this proof need not be express or positive. It may
be inferred from the circumstances. If, from all the
facts attending the killing, the jury can fully, reasona-
bly, and satisfactorily infer the existence of the inten-
tion to kill, and the malice of heart with which it was
done, they will be warranted in so doing. He who uses

upon the body of another, at some vital part, with a manifest intention to use it upon him, a deadly weapon, as an axe, a gun, a knife or a pistol, must, in the absence of qualifying facts, be presumed to know that his blow is likely to kill; and, knowing this, must be presumed to intend the death which is the probable and ordinary consequence of such an act. He who so uses a deadly weapon without a sufficient cause of provocation, must be presumed to do it wickedly, or from a bad heart. Therefore, he who takes the life of another with a deadly weapon, and with a manifest design thus to use it upon him, with sufficient time to deliberate, and fully to form the conscious purpose of killing, and without any sufficient reason or cause of extenuation, is guilty of murder in the first degree." Id. at 16.

As we perceive appellant's argument he concedes the legitimacy of the inference as to the existence of malice but maintains that it should not provide a basis for a finding of the requisite intention. We cannot agree. A thorough analysis of this inference was set forth in our decision in *Commonwealth v. Gibbs*, 366 Pa. 182, 76 A.2d 608 (1950) therein we stated:

Defendant next alleges that it was error for the court to instruct the jury that from the use of a deadly weapon, a presumption of the intent to kill arises. He maintains that such a presumption takes from the jury the right to find whether that intent did exist. In answer to this it is sufficient to say that the statement of the learned trial judge was in complete conformity with *Commonwealth v. Drum*, supra at p. 17, as well as charges we approved in *Commonwealth v. Green*, 294 Pa. 573, 579, 144 A. 743; *Commonwealth v. Blakeley*, 274 Pa. 100, 105, 117 A. 685; *Commonwealth v. Lacie*, 256 Pa. 526, 100 A. 974; *Commonwealth v. Boyd*, 246 Pa. 529, 535, 92 A. 705. That presumption is not, as defendant contends, a presumption of law; it

is merely a presumption of fact which permits the jury to find intent from the use of a deadly weapon: *Commonwealth v. Gidaro*, 363 Pa. 472, 478, 70 A.2d 359; *Commonwealth v. Prenni*, 357 Pa. 572, 575, 55 A.2d 532; *Commonwealth v. Robinson*, 305 Pa. 302, 310, 157 A. 689. That this is true is made apparent by the fact that it is quite frequently spoken of as an inference rather than a presumption: *Commonwealth v. Steele*, 362 Pa. 427, 430, 66 A.2d 825; *Commonwealth v. Chapman*, 359 Pa. 164, 167, 58 A.2d 433; *Commonwealth v. Holley*, 358 Pa. 296, 302, 56 A.2d 546. While we agree that it is preferable in charging a jury to call it an inference, the two forms are interchangeable. A presumption of fact is nothing more than a prima facie inference: *Commonwealth v. Kluska*, 333 Pa. 65, 69, 3 A.2d 398. That this presumption is a reasonable one founded on human experience is obvious. One does not normally use a deadly weapon on a vital part of another's body unless he intends to kill. The law could not properly perform its function in society if it were to ignore such fundamental truisms. As we said in *Commonwealth v. Wucherer*, 351 Pa. 305, 312, 41 A.2d 574: " . . . there is no reason why a person charged with crime should be exempt from the ordinary presumptions or inferences which attach to the acts of men in all other relations of life . . . " Id. at 611.

This presumption was developed in recognition of the impossibility for the Commonwealth to meet its burden of establishing a requisite frame of mind without resort to circumstantial proof.[3] Because a state of mind by its very nature is subjective, absent a declaration by the actor himself we can only look to the conduct and the circumstances surrounding it to determine the mental state which occasioned it.

**3.** *Commonwealth v. Tyrrell*, 405 Pa. 210, 174 A.2d 852 (1961). *Commonwealth v. Kravitz*, 400 Pa. 198, 161 A.2d 861 (1960).

" . . . [I]ntent being subjective, often unsusceptible of direct proof [it] must be found in the implications of objective manifestations . . . . " *Commonwealth v. Jones, supra,* 355 Pa. at 526, 50 A.2d at 319.

First we know of no proposition more consistent with human experience than the conclusion that absent circumstance to the contrary, a person intends the natural and probable consequences of his act.[4] It is also important to bear in mind that the inference is only a permissible one and need not be accepted by the finder of fact. *Commonwealth v. Cannon,* 453 Pa. 389, 309 A.2d 384 (1973); *Commonwealth v. Hornberger, supra; Commonwealth v. Ewing, supra; Commonwealth v. Winebrenner,* 439 Pa. 73, 265 A.2d 108 (1970); *Commonwealth v. Commander,* 436 Pa. 532, 260 A.2d 773 (1970). Thus, the jury must reject the inference where the circumstances negate the existence of such an intent, *Commonwealth v. Caye, supra,* and may ignore the inference even absent such circumstances.

Appellant also attempts to support his position by suggesting that the legislative requirement that the act be willful, deliberate and premeditated, requires something more than a conscious intent to bring about the death of the victim. This proposition would introduce a new dimension to the law of homicide within this jurisdiction. It would in effect require the distinction between first and second degree murder to depend upon the degree of reflection from which the plan to kill originated. Our cases have consistently held that the requirement of premeditation and deliberation is met whenever

4. *Commonwealth v. Gibbs,* 366 Pa. 182, 76 A.2d 608 (1950); *Commonwealth v. Alston,* 456 Pa. 128, 317 A.2d 299 (1947); *Commonwealth v. Drum,* 58 Pa. 9 (1968). See also, Prosser, Torts 492–494 (4th ed. 1971); Restatement (Second) of Torts, § 8A (1965); *Yania v. Bigan,* 397 Pa. 316, 155 A.2d 343 (1959); *Burr v. Adam Eidemiller, Inc.,* 386 Pa. 416, 126 A.2d 403 (1956); Cf., *Spivey v. Battaglia,* 258 So.2d 815 (Fla.1972).

there is a conscious purpose to bring about death. *Commonwealth v. Jones, supra.* This is emphasized by those decisions which have stated that the design to kill can be formulated in a fraction of a second.[5] *Commonwealth v. Earnest,* 342 Pa. 544, 21 A.2d 38 (1941); *Commonwealth v. Scott,* 284 Pa. 159, 130 A. 317 (1925). An analysis of our decisions indicate that the courts in this jurisdiction have determined that the distinction between murder of the first and second degree is the presence of a specific intent to kill. *Commonwealth v. Bowden, supra.* We can find no reason where there is a conscious intent to bring about death to differentiate between the degree of culpability on the basis of the elaborateness of the design to kill. The heinous element sought to be punished by the higher penalty (a finding of murder in the first degree) is that the accused acted intending his acts to result in the death of another human being.[6] We believe

---

**5.** We recognize that some authorities suggest this concept. See LaFave and Scott Handbook in Criminal Law, 562–568 (1972). These authors argue that the presumption, although establishing the intent to kill, should not permit an inference of premeditation and deliberation. Under their view, the trier of fact would be restricted to finding first degree murder in the following three categories: 1) facts about how and what the defendant did prior to the actual killing which show he was engaged in activity directed toward the killing, that is, *planning activity* ; 2) facts about the defendant's prior relationship and conduct with the victim from which *motive* may be inferred; and 3) facts about the *nature of the killing* from which it may be inferred that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design. We believe that this is an unreasonably restrictive view of the legislative intention and would in many instances prevent a finding of first degree murder even though it is clear under all of the facts that the accused possessed a conscious intent to take life.

**6.** The only other intentional felonious killing recognized under our law is the crime of voluntary manslaughter. Voluntary manslaughter is distinguishable from murder in the first degree because of the absence of malice accompanying a killing. In murder, the intent to kill is the product of reflection, in voluntary manslaughter the conduct is inspired by passion resulting from sufficient legal provocation. *Commonwealth v. Robinson,* 452 Pa. 316, 305 A.2d 354 (1973). *Commonwealth v. Butcher,* 451 Pa. 359, 304 A.2d 150 (1973).

that the court's charge was in accordance with the long standing law in this Commonwealth and we are not persuaded that there is any compelling reason why those precepts should be altered.

Judgment of sentence affirmed.

EAGEN, J., concurs in the result.

MANDERINO, J., filed a dissenting opinion joined by ROBERTS, J.

MANDERINO, Justice (dissenting).

I dissent from the majority's statement that the trial court correctly instructed the jury that appellant's act of pointing a gun at a vital part of another's body is, in itself, enough for the jury to infer that the killing was willful, deliberate, and premeditated. *See Commonwealth v. Kittreles,* Pa., 350 A.2d 842 (1976) (Manderino dissenting joined by Roberts, J.); *Commonwealth v. Thomas,* Pa., 350 A.2d 847 (1976) (Manderino dissenting joined by Roberts, J.). The majority states that evidence of the use of a deadly weapon on a vital part of the body is sufficient to support an inference of the intent to kill—so far so good. This first inference is reasonable and was accepted at common law. The majority then proceeds, however, without explanation and without any basis in the history of the law of murder in Pennsylvania or elsewhere, to hold that from the first inference—that one had the intent to kill—a second inference is permissible—that the defendant's act was willful, deliberate, and premeditated. In effect, the majority says that proof of the use of a deadly weapon upon a vital part of the body authorizes the conclusion that the defendant had a specific intent to kill, and that that conclusion warrants a second inferential leap to the conclusion that the killing was willful, deliberate, and premeditated. That is not, and has not been, a proper analysis of the law of murder in this or any other jurisdiction.

One who possesses the intent to kill may or may not have formed that intent to kill in a willful, deliberate, and premeditated murder. If the intent to kill was willful, deliberate, and premeditated, the killing is murder in the first degree. If, however, the defendant's intent to kill was not formulated in a willful, deliberate, and premeditated manner, the killing is not murder in the first degree, but murder in the second degree. This has always been the law until today.

The distinction is vital and is the law in all American jurisdictions which recognize degrees of murder.

"To be guilty of [murder in the first degree] the defendant must not only intend to kill but in addition he must premeditate the killing and deliberate about it.

. . . . . . . .

[A defendant] can generally be held guilty of *second degree murder* . . . on the theory that, though he could not premeditate and deliberate, he could and did at least have *an intent to kill* (as shown, in most cases, by his intentional use of a deadly weapon upon the victim).

. . . . . . . .

Although the law may recognize a presumption, from the fact that the defendant killed with a deadly weapon, that the crime which he commits is murder, *there is no presumption that the murder is first degree murder*; for the higher degree there must be some affirmative evidence to support a finding that the defendant in fact did premeditate and deliberate." (Emphasis added.)

LaFave & Scott, *Criminal Law,* pp. 563–564 (1972).

I have found no authority, treatise, hornbook, encyclopedia, or law review article disagreeing with the above statement of the law.

In every one of the cases cited by the majority, there was evidence *in addition* to the use of a weapon on a vi-

tal part of the body from which the factfinder could reasonably determine that the defendant not only intended to kill, but had time for willful, deliberate, and premeditated reflection—even though for a short period. Those cases were properly decided. As explained by LaFave and Scott:

"On the basis of events before and at the time of the killing, the trier of fact will sometimes be entitled to infer that the defendant actually premeditated and deliberated his intentional killing. Three categories of evidence are important for this purpose: (1) facts about how and what the defendant did prior to the actual killing which show he was engaged in activity directed toward the killing, that is, *planning activity*; (2) facts about the defendant's prior relationship and conduct with the victim from which *motive* may be inferred; and (3) facts about the *nature of the killing* from which it may be inferred that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design." (Footnote omitted; emphasis in original.)

*Id.* at 564.

I admit that certain statements in some prior Pennsylvania cases seem to indicate that a killing accompanied by an intent to kill equals murder in the first degree. There is no basis for such statements in the law of murder, and such language should be explicitly repudiated.

In Pennsylvania, murder in the first degree is a statutory offense. The first part of the statute in effect at the time of the killing for which appellant here was convicted, states that murder in the first degree shall include

"[a]ll murder which shall be perpetrated by means of poison, or lying in wait, *or by any other kind of willful, deliberate and premeditated killing.* . . ." (Emphasis added.)

Act of June 24, 1939, P.L. 872, § 701; 1959 Dec. 1, P.L. 1621, § 1 (18 P.S. 4701). *See also* Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1 (18 CPSA § 2501 and § 2502(a)).

We have often stated that the use of a deadly weapon on a vital part of the body is evidence which supports an inference of malice, and thus sustains a conviction of murder in the second degree. *Commonwealth v. Roots,* 452 Pa. 535, 306 A.2d 873 (1973), *Commonwealth v. Robinson,* 452 Pa. 316, 305 A.2d 354 (1973), *Commonwealth v. Palmer,* 448 Pa. 282, 292 A.2d 921 (1972), and *Commonwealth v. Myers,* 439 Pa. 381, 266 A.2d 756 (1970). We have never held, however, that such evidence alone supports both an inference of malice and an inference that the killing was willful, deliberate, and premeditated.

We have upheld convictions of murder in the first degree when the evidence establishing *not only* the use of a weapon on a vital part of the body, *but also other facts* from which the factfinder could reasonably conclude that the killing was willful, deliberate, and premeditated. In these cases, the use of a weapon on a vital part of the body was sufficient to establish a specific intent to kill but *other evidence* was present to establish that the specific intent to kill was also willful, deliberate, and premeditated. *Commonwealth v. Petrakovich,* 459 Pa. 510, 329 A.2d 844, 848 (1974); *Commonwealth v. Mosley,* 444 Pa. 134, 279 A.2d 174 (1971); *Commonwealth v. Hornberger,* 441 Pa. 57, 270 A.2d 195 (1970); *Commonwealth v. Ewing,* 439 Pa. 88, 264 A.2d 661 (1970); *Commonwealth v. Commander,* 436 Pa. 532, 260 A.2d 773 (1970).

ROBERTS, J., joins in this dissenting opinion.