405 A.2d 1305

COMMONWEALTH of Pennsylvania

v.

James M. WEAKLAND.

Superior Court of Pennsylvania.

Argued May 7, 1979.

Decided June 13, 1979.

Petition for Allowance of Appeal Denied Nov. 29, 1979.

Thomas R. Wilson, West Chester, for appellant.

Joan D. Lasensky, Assistant District Attorney, West Chester, for Commonwealth, appellee.

Before HOFFMAN, EAGEN and HESS, JJ.*

PER CURIAM:

On November 30, 1976, James M. Weakland plead guilty to robbery and conspiracy and nolo contendere to a charge of murder. A hearing before a three-judge panel was subsequently conducted in order to determine the degree of murder. Following the hearing, Weakland was found guilty of murder of the first degree in the shooting and resultant death of Cecil Rash. Thereafter, a judgment of sentence of life imprisonment was imposed on the murder conviction. This appeal is from that judgment of sentence.

Weakland and his brother decided to perpetrate a robbery in a service station owned by Cecil Rash and his wife, Florence Rash. The two entered the station unarmed. Once inside, Weakland obtained a wrench and struck Cecil Rash on the head. Cecil Rash fell to the floor, and Weakland took money from his pocket. Weakland then went to the station office where his brother was holding Florence Rash. Weakland took money and other items from the office and carried them to his automobile. Weakland returned to the office to get his brother, and, upon seeing his brother leaving, again left the garage.

In the interim, Cecil Rash had obtained a handgun. Cecil Rash then shot Weakland in the leg. Weakland fell to the ground, and his brother began throwing items at Cecil Rash from his automobile. Cecil Rash then shot at the brother. As this occurred, Weakland threw a trash can at Cecil Rash, knocked him to the ground, and wrestled the gun from Cecil Rash. Weakland then stood some "four yards, five yards"—"three to four steps"—from Cecil Rash who was "standing dead still." Weakland held the gun "at shoulder height or slightly lower" and shot Mr. Rash twice. Rash died from the injury.

* Chief Justice Michael J. Eagen of the Supreme Court of Pennsylvania and Judge Warren K. Hess of the Court of Common Pleas of Berks County, Pennsylvania, are sitting by designation.

■ Weakland argues the evidence presented is insufficient to support a verdict of murder of the first degree. More specifically, Weakland argues the evidence does not establish "the requisite intent to kill necessary for a finding of murder [of] the first degree." A study of the record readily demonstrates this contention is without merit. *Commonwealth v. Robinson*, 468 Pa. 575, 364 A.2d 665 (1976); *Commonwealth v. Carroll*, 412 Pa. 525, 194 A.2d 911 (1963). *Cf. Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1975); *Commonwealth v. Moore*, 473 Pa. 169, 373 A.2d 1101 (1976).

Next, Weakland argues that the assistant district attorney in closing argument made reference to Weakland having shot Mrs. Florence Rash during the same criminal event; that no evidence existed to support such an argument; that Weakland was prejudiced by the improper argument; and, that he is entitled to a new degree of guilt hearing as a result.

We first note the inaccurate references of the prosecuting attorney occurred not only during closing argument but at other times during the degree of guilt hearing. More specifically, the attorney asked two hypothetical questions which included a shooting of Mrs. Rash in the factual basis. Objections to the questions were entered on the basis that no evidence existed to show Weakland shot Mrs. Rash. The objections were sustained.[1]

---

1. After the hypothetical questions were asked but before closing argument, a discussion occurred regarding the pleas which were entered to numerous charges filed against Weakland in connection with this criminal episode. The charges related to Weakland's conduct toward both Cecil and Florence Rash.

In the course of this discussion, Weakland's counsel stated:
"I went through the colloquy, and so that the record is clear, all of the nolo contendere pleas were entered when my client expressed a lack of memory over some of these incidences [sic] as to exactly what happened. *We would not contest the fact that she was shot, obviously, but, how it happened, I don't know.* However, the plea was entered because there is no way we can contest what's happened.

"*It appears from the record here that there is no evidence that he, in fact, did the shooting [of Florence Rash], but that is neither*

The references made during closing argument were objected to on the same basis advanced in the objections to the hypothetical questions. The court then adjourned the hearing, but later reiterated its agreement that no evidence existed to support an argument that Weakland had shot Mrs. Rash.

■ Since counsel never requested any relief when his objections were entered, he may not now complain Weakland was prejudiced by these remarks, *Commonwealth v. Brown*, 467 Pa. 512, 359 A.2d 393 (1976); *Commonwealth v. Glenn*, 459 Pa. 545, 330 A.2d 535 (1974), and this is particularly true in light of counsel's own statements to the court during the discussion of the pleas regarding the episode.

Judgment of sentence affirmed.

here nor there. It doesn't affect this particular proceeding as far as I can see." (Emphasis added.)

Immediately after this statement was made, the following occurred:

"[The court—first judge:] I don't recall anything in the pleas of the nolo contendere which in effect, concede that your man shot her.

"[Defense counsel:] *There is nothing that concedes that he shot her.*

"[The court—second judge:] There was a plea of nolo contendere to aggravated assault?

"[Defense counsel:] Yes. There were several instances of aggravated assault on Mrs. Rash and that is the reason why, I believe, we decided to enter the no contest pleas."

"[The court—second judge:] Very good." (Emphasis added.)