**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MELVIN OJEDA | : | |
| | : | |
| Appellant | : | No. 584 MDA 2025 |

Appeal from the Judgment of Sentence Entered March 31, 2025
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0001230-2023

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: DECEMBER 29, 2025**

Melvin Ojeda (Appellant) appeals from the judgment of sentence imposed following his jury convictions of one count each of first-degree murder, burglary, criminal trespass, recklessly endangering another person, and possessing instruments of a crime; and four counts each of aggravated assault and simple assault.[1]  Appellant raises a sole challenge to the sufficiency of the evidence supporting his murder conviction.  We affirm.

On February 14, 2023, Appellant travelled to the home of Jenette Santiago (Santiago), the mother of two of Appellant's minor children, on West Windsor Street, Reading, Pennsylvania (the residence).  In early 2023, following his and Santiago's separation approximately nine months prior,

---

[1] 18 Pa.C.S.A. §§ 2502(a), 3502(a)(4), 3503(a)(1)(ii), 2705, 907(a), 2702(a)(1), (4), 2701(a)(1), (2).

Appellant reestablished communication with Santiago, and was attempting to reconcile. Santiago, however, was romantically involved with Richardson Rivera Lugo (Lugo). Santiago and Lugo lived at the residence with Santiago and Appellant's four- and five-year-old sons, and Santiago's thirteen-year-old daughter from a prior relationship.

The trial court summarized the facts adduced at trial regarding what next transpired:

> On the morning of [February 14, 2023], [Appellant] entered [the residence] by climbing through a window, while wearing a ski mask, and was armed with a 9mm pistol equipped with a flashlight and laser[ sight]. N.T., 2/24/25-2/27/25, at 184. Video evidence showed [Appellant] kicked at the back door first, then entered by the living room window, which easily opened. *Id.* at 141-43. [Appellant] had previously lived at [the] residence with Santiago and their children. *Id.* at 173. Once inside, [Appellant] pointed the gun at Santiago's head, then proceeded to the children's bedroom, [where, Santiago testified, Appellant pointed] the gun at the children as well. *Id.* at 184-87, 189. [Appellant proceeded to the kitchen, whereupon a] violent confrontation ensued between [Appellant] and [Lugo] …. *Id.* at 189. Santiago attempted to intervene and was shot in the thigh. *Id.* at 191-92. The struggle between [Appellant] and [Lugo] continued, resulting in multiple gunshots that left [Lugo] dead at the scene. *Id.* at 195.
>
> … Multiple witnesses, including crime scene technicians and investigators, presented forensic evidence analysis on the bullet trajectories and photographs of the scene. Autopsy findings revealed that [Lugo] suffered three gunshot wounds—one to the chest, one to the temple, and one to the back—all within intermediate range[, *i.e.*, from two inches to two feet away]. *Id.* at 439, 444, 452-53.[2] Santiago sustained a through-and-through

---

[2] The Commonwealth's forensic pathologist, Supriya Kuruvilla, M.D. (Dr. Kuruvilla), opined that Lugo's cause of death was "multiple gunshot wounds."
*(Footnote Continued Next Page)*

gunshot wound to the thigh, which caused significant pain and scarring. *Id.* at 192-93.

[Appellant] turned himself in to police following the shooting and gave a recorded interview in Spanish.[3] [Appellant] claimed he went to [the residence] to check on the children after Santiago had been distant and sent [Appellant] concerning [text] messages the night before. *Id.* at 354-55. [Appellant] admitted to entering through the window and encountering Santiago and [Lugo]. *Id.* at 367-68. [Appellant] alleged that [Lugo] had a knife and that a struggle for the gun led to it discharging multiple times. *Id.* at 387, 391. [Appellant] stated he did not intend to harm anyone, and maintained that the gun went off accidentally during the physical altercation. *Id.* at 378.

Trial Court Opinion, 6/27/25, at 2-3 (punctuation modified; footnotes and record citations added).

On April 28, 2023, the Commonwealth filed a criminal information charging Appellant with the above offenses, in addition to second- and third-degree murder.[4] Appellant, although represented by counsel, subsequently filed several *pro se* motions, which (1) set forth Appellant's version of events;

_____

N.T., 2/24/25-2/27-25, at 454. Dr. Kuruvilla testified that Lugo's chest wound would have been fatal within a matter of minutes, and the gunshot wound to his temple would have killed Lugo "within seconds to very, very few minutes[.]" *Id.* at 442-43, 447. Dr. Kuruvilla testified that Lugo's gunshot wound to the back was a nonfatal flesh wound, with an entry point in the upper portion of Lugo's back, shallowly tunneling across his back, and exiting the lower midline of his back. *Id.* at 448.

[3] Appellant is a Spanish language speaker, and was unable to communicate in English throughout the pendency of this case. N.T., 2/24/25-2/27/25, at 490-91, 515. Appellant was provided a Spanish language interpreter at all relevant court proceedings.

[4] 18 Pa.C.S.A. § 2502(b), (c).

(2) requested additional discovery; and (3) sought appointment of new counsel. The trial court denied each motion. On May 31, 2024, Appellant filed a counseled "Notice of Insanity and/or Mental Infirmity." Appellant subsequently submitted to a psychological evaluation; however, Appellant did not pursue an insanity and/or mental infirmity defense at trial.

The matter proceeded to a jury trial on February 24-27, 2025. At the conclusion of trial, the jury convicted Appellant of the above-described offenses.[5]

On March 31, 2025, the trial court sentenced Appellant to an aggregate term of life in prison, without the possibility of parole, followed by a consecutive prison term of 9 to 26 years. Appellant timely filed a post-sentence motion challenging the sufficiency and weight of the evidence presented at trial, and requesting modification of his sentence. The trial court denied Appellant's motion. Appellant timely filed a notice of appeal. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

---

[5] At Appellant's request, the trial court instructed the jury on the lesser offenses of voluntary and involuntary manslaughter (18 Pa.C.S.A. §§ 2503, 2504). The jury acquitted Appellant of these offenses, as well as second- and third- degree murder. According to the jury foreperson, because the jury found Appellant guilty of first-degree murder, it was the jury's intention "not to comment on the other [homicide charges,] so we put, Not Guilty[ on the verdict sheet]." N.T., 2/24/25-2/27/25, at 682; **see also** Order (Recordation of the Verdict), 2/27/25, at 2 (unpaginated).

Appellant raises the following issue: "Was there sufficient evidence presented at trial to support the guilty verdict for first-degree murder, in that the testimony at [t]rial failed to demonstrate that [Appellant] had the specific intent to kill[?]" Appellant's Brief at 7.[6]

Appellant directs our attention to testimonial evidence, which, he contends, supports his assertion that he lacked a specific intent to kill. *Id.* at 11-12. Primarily, Appellant relies on Reading Police Criminal Investigator Daniel Cedeno's (Investigator Cedeno) testimony describing Appellant's initial statement to police. *Id.* at 12. According to Appellant, Investigator Cedeno testified regarding Appellant's explanation "that [Appellant] was not [at the residence] to do any harm, but he did want to confront [Santiago and Lugo,] and basically … confirm that [Santiago] was[,] in fact[,] with [Lugo]." *Id.* (quoting N.T., 2/24/25-2/27/25, at 378); *see also* N.T., 2/24/25-2/27/25, at 378 (Investigator Cedeno confirming that Appellant advised him "that he

_____

[6] Appellant preserved his sufficiency challenge in a timely-filed, court-ordered Pa.R.A.P. 1925(b) concise statement. However, in his appellate brief, Appellant's two-page argument cites no legal authority in support of his substantive issue. We could deem Appellant's issue waived on this basis. *See* Pa.R.A.P. 2119(a) (an appellant's argument shall be "followed by such discussion and citation of authorities as are deemed pertinent."); *Commonwealth v. Martz*, 232 A.3d 801, 811 (Pa. Super. 2020) (stating that failure to comply with Rule 2119(a) may result in waiver of underdeveloped claims, and observing that "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant. Mere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter." (brackets and citations omitted)). Nevertheless, we address Appellant's sole issue on appeal.

didn't want to be taken for a fool[.]").  Appellant emphasizes he told Investigator Cedeno that he went to the residence that morning "to see his children and to see what was going on."  *Id.* (citing N.T., 2/24/25-2/27/25, at 384).

Appellant maintains the evidence shows that

he did not intend to kill anyone.  [Appellant] wanted to confront and confirm, not kill.  [Appellant] certainly did not mean to harm Santiago;  he was trying to reestablish their relationship. [Appellant] did not intend to kill Lugo.  If [Appellant] wanted to kill Lugo, he could have gone into the kitchen and shot him directly.  Instead, [Appellant] confronted Lugo and a physical struggle ensued.  During that struggle, the gun was discharged, and Lugo was killed.  It is obvious to anyone, including Appellant, that if [Appellant] committed a murder, he would never again have a relationship with Santiago.  … [Appellant] had no reason to kill Lugo and, it is respectfully submitted, never formed the requisite intent to kill required for a first-degree murder conviction.  The testimony clearly demonstrates that there was a struggle involving three individuals, when the gun was discharged and [Lugo was] killed.  Appellant had no intent to kill.

Appellant's Brief at 12-13 (punctuation modified).

We review Appellant's sufficiency challenge pursuant to the following standard:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary.  In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  It is within the province of the factfinder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence.  The Commonwealth may sustain its burden of proving

every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder.

*Commonwealth v. Scott*, 325 A.3d 844, 849 (Pa. Super. 2024) (citation and brackets omitted). "Any doubts regarding a defendant's guilt may be resolved by the fact[]finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Peters*, 320 A.3d 1231, 1236 (Pa. Super. 2024) (*en banc*) (citation omitted), *appeal granted*, 320 A.3d 1231 (Pa. Jan. 6, 2025).

"An individual commits first-degree murder when he intentionally kills another human being; an intentional killing is defined as a 'willful, deliberate and premeditated killing.'" *Commonwealth v. Newton*, 318 A.3d 133, 139 (Pa. Super. 2024) (citing 18 Pa.C.S.A. §§ 2501, 2502(a); quoting *id.* § 2502(d)). Our Supreme Court has explained that

> [t]o sustain a conviction for first-degree murder, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the accused was responsible for the killing; and (3) **the accused acted with malice and a specific intent to kill**. *Commonwealth v. Sanchez*, 36 A.3d 24, 37 (Pa. 2011). Moreover, a fact[]finder may infer the intent to kill "based on the accused's use of a deadly weapon on a vital part of the victim's body." *Id.*

*Commonwealth v. Ballard*, 80 A.3d 380, 390 (Pa. 2013) (emphasis added; citation modified); *see also Commonwealth v. Packer*, 168 A.3d 161, 168 (Pa. 2017) ("Malice is a legal term" that encompasses "not only a particular

ill-will, but every case where there is a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." (citation omitted)); **Newton**, 318 A.3d at 139 ("The deadly weapon presumption is a presumption of fact founded on human experience, since 'one does not normally use a deadly weapon on a vital part of another's body unless he intends to kill.'" (quoting **Commonwealth v. O'Searo**, 352 A.2d 30, 37 (Pa. 1976)); **Commonwealth v. Talbert**, 129 A.3d 536, 543 (Pa. Super. 2015) ("A deadly weapon is defined as[, *inter alia*,] any firearm, whether loaded or unloaded …." (citation and brackets omitted)).

Regarding the specific intent to kill, we have observed that "murder may be committed without a motive, either actual or apparent, but **an established motive may go to prove the related intent**[,] just as an absence of motive may be used to deny the existence of intent." **Commonwealth v. Fitzpatrick**, 159 A.3d 562, 567 (Pa. Super. 2017) (emphasis in original; citation omitted).

> When there is no direct evidence of intent to kill, the fact[]finder may glean the necessary intent from the act itself and from all surrounding circumstances. **Specific intent to kill can be proven where the defendant knowingly applies deadly force to the person of another**.

**Id.** at 568 (emphasis in original; citation omitted).

Our Supreme Court has observed that "the law does not require a lengthy period of premeditation" to sustain a conviction of first-degree murder. ***Commonwealth v. Anderson***, 323 A.3d 744, 753 (Pa. 2024).

> [**T**]**he period of reflection required for premeditation to establish the specific intent to kill may be very brief; in fact**[**,**] **the design to kill can be formulated in a fraction of a second.** Premeditation and deliberation exist whenever the assailant possesses the conscious purpose to bring about death.

***Commonwealth v. Hitcho***, 123 A.3d 731, 746 (Pa. 2015) (emphasis added; quotation marks and citation omitted); ***see also Commonwealth v. Miller***, 724 A.2d 895, 899 (Pa. 1999) ("[N]o particular period of premeditation is required to form [a specific] intent[ to kill]." (citation omitted)).

Instantly, the trial court rejected Appellant's challenge to the sufficiency of the evidence supporting his first-degree murder conviction, reasoning as follows:

> This court can conclude, without hesitation, that the evidence was sufficient to sustain the conviction for first-degree murder. The evidence presented showed that Appellant went to [the residence] on February 14, 2023, at around 5:30/6:00[ ]a.m. Appellant and Santiago had an on-again-off-again relationship for a number of years. Appellant was seen kicking the back door of the [residence] and then forced entry by opening a broken window in the living room, pointed a gun at [] Santiago's head, and said, [in Spanish, "Where is that mother fucker?" N.T., 2/24/25-2/27/25, at 184-85.] Appellant went into [his and Santiago's] children's room and pointed [a] flashlight[, which was mounted on his handgun,] at the children. ***Id.*** at 189. [] Santiago [] yell[ed] at [Appellant] to get out. [] Appellant then grab[bed Santiago] by her hair and thr[ew] her to the ground. ***Id.*** [] Appellant then went across the living room to the kitchen area where [Lugo] was standing. ***Id.*** at 191. [] Appellant and []Lugo g[ot] into a[ physical] altercation while [] Santiago [] tr[ied] to pull Appellant away, [and Santiago was] shot in the thigh. ***Id.*** at 192. A few shots rang out during

- 9 -

the tussle and [] Lugo f[ell] to the ground as Appellant [left] through the back door. *Id.* at 195-96. Two of the shots were to a vital part of [Lugo's] body.

Viewed in the light most favorable to the Commonwealth, the prosecution presented sufficient evidence to the jury to support a finding that Appellant willingly and consciously participated in the intentional killing of [Lugo]. The evidence confirmed that [] Appellant, on his own, maintained the requisite specific intent to take [Lugo's] life. This clearly satisfies the statutory elements of first-degree murder, and the evidence is therefore sufficient to sustain the conviction.

Trial Court Opinion, 6/27/25, at 5-6 (capitalization, punctuation and some record citations modified; record citations moved from footnotes to body).

The trial court's findings are supported by the record, and we agree with its conclusion that the evidence presented at trial, viewed in the light most favorable to the Commonwealth, was sufficient to prove, beyond a reasonable doubt, that Appellant shot Lugo with the specific intent to kill. *See Scott*, 325 A.3d at 849.

Significantly, in addition to the facts the trial court highlighted above, the jury had the benefit of Santiago's testimony detailing what she observed during Appellant and Lugo's fatal altercation. Santiago testified that after Appellant shot her, she watched as Appellant and Lugo "moved to the front of the sink in the kitchen[,] where [Appellant's] back is towards the kitchen sink and [Lugo] is in front of him." N.T., 2/24/25-2/27/25, at 195. Santiago described what ensued:

[Appellant and Lugo] are still tussling. I am on [Appellant's] left side. I am pulling [Appellant], telling him to let go. … I just hear

> three to four gunshots go off. [Lugo] collapsed and fell on top of [Appellant] in a hugging stance.
>
> At this point, I am still pulling on [Appellant's] left arm. I just see [Appellant] wiggle. At this point, [Appellant's] arm is like in an L-shape. I hear boom. I see something …, and [Lugo] just drops to the floor. And at that point I dropped with [Lugo], and I started to scream, [Lugo] get up. [Appellant] walks over us, opens the back door and leaves.

*Id.* Santiago further confirmed that, prior to Appellant firing a final shot, Lugo was motionless. *Id.* at 196-97.

Considering the foregoing evidence, the jury could reasonably infer the fact that Appellant shot Lugo multiple times, in vital parts of his body, demonstrated Appellant's specific intent to kill. *See Commonwealth v. Chamberlain*, 30 A.3d 381, 394 (Pa. 2011) (concluding sufficient evidence supported a first-degree murder conviction where the victims suffered "multiple gunshot wounds, which demonstrated that the shooter acted with the requisite malice and specific intent to kill, and committed the killings in an intentional, deliberate and premeditated manner." (citations omitted)); *see also Ballard*, 80 A.3d at 390 (stating a factfinder may infer intent to kill "based on the accused's use of a deadly weapon on a vital part of the victim's body" (citation omitted)). Further, Santiago's testimony that Appellant fired a final shot at Lugo—then motionless and no longer struggling with Appellant— supported a reasonable inference of Appellant's specific intent to kill Lugo.

Appellant premises his sufficiency argument on the assumption that the jury was required to credit the initial statement he gave to police. However,

it is well established that "[i]t is within the province of the factfinder to … believe all, part, or none of the evidence." **Scott**, 325 A.3d at 849 (citation omitted). Consequently, the jury was free to reject Appellant's version of events, and credit the testimony of the Commonwealth's witnesses. Further, while Appellant insists that "he had no reason to kill Lugo," Appellant's Brief at 13, the jury was free to determine that Appellant was motivated to kill, potentially out of anger and/or to remove a perceived impediment to his reconciliation with Santiago. **See Fitzpatrick**, 159 A.3d at 567.

Accordingly, as ample evidence supported Appellant's specific intent to kill, Appellant's sole issue entitles him to no relief.

Judgment of sentence affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/29/2025