J-S47042-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DONNA V. HEPFER | : | |
| | : | |
| Appellant | : | No. 355 MDA 2020 |

Appeal from the Judgment of Sentence Entered September 24, 2019
in the Court of Common Pleas of Centre County
Criminal Division at No: CP-14-CR-0001480-2018

BEFORE:   STABILE, J., NICHOLS, J. and STRASSBURGER, J.*

MEMORANDUM BY STABILE, J.:                    **FILED MAY 21, 2021**

Appellant, Donna V. Hepfer, appeals from her September 24, 2019 judgment of sentence for theft by unlawful taking, receiving stolen property, and retail theft.[1]  We affirm.

We glean the following factual summary from the record. Appellant began working at Bellefonte Mart in 2017. Bellefonte Mart is a small convenience store owned by Jogender Singh. Relevant to this appeal, Bellefonte Mart sold scratch-off lottery tickets through the Pennsylvania Lottery. Among other duties, Appellant was responsible for opening the store for the day and counting lottery tickets.  Appellant often was the sole

---

[1] 18 Pa.C.S.A. § 3921(a), 18 Pa.C.S.A. § 3925(a), and 18 Pa.C.S.A. § 3929(a)(1), respectively.

*Retired Senior Judge assigned to the Superior Court.

employee present from 5:30 a.m. until 9:00 or 10:00 a.m., when Singh's wife, Dolly Singh, came to work.

As a lottery retailer, Bellefonte Mart ordered new packs of scratch-off lottery tickets from the Pennsylvania Lottery to sell in the store. Each pack had a specific serial number associated with the selling retailer. Before putting a pack out for sale, an employee had to activate the pack by scanning a bar code. Once the ticket pack was activated, the winning tickets in the pack had value that could be redeemed for cash at any lottery retailer. At Bellefonte Mart, Appellant was the only employee besides Singh's wife who was authorized to activate the ticket pack. As employees sold tickets throughout the day, the employees recorded the ticket number and dollar value on Bellefonte Mart's inventory list.

In early 2018, Singh noticed the amount the Pennsylvania Lottery charged his account did not match the number of tickets sold in Bellefonte Mart's inventory. Singh suspected someone was stealing the tickets and notified the Pennsylvania Lottery and the Bellefonte Borough Police Department. Detective William Witmer, a detective with the Bellefonte Borough Police Department, began an investigation in June 2018. By examining and comparing Bellefonte Mart's employee schedules, inventory of lottery tickets sold, dates and times of ticket activation and redemption, and Bellefonte Mart's account records at the Pennsylvania Lottery, Detective Witmer determined that Appellant had stolen both individual and entire packs

of scratch-off tickets from Bellefonte Mart from January 2018 to May 2018, and cashed in the winning tickets at Bellefonte Mart and various lottery retailers in the Bellefonte area. The loss to Bellefonte Mart totaled approximately $11,000.

Police charged Appellant with the above-referenced charges and Appellant was tried by jury on July 29, 2019. At trial, the following witnesses testified on behalf of the Commonwealth: Singh; Detective Witmer; Lance Rhodes, a security and retailer compliance manager with the Pennsylvania Lottery; and Autumn Hanley, a customer service associate from Weis Markets, which is a grocery store and lottery retailer close to Bellefonte Mart. Appellant testified on her own behalf.

The evidence by the Commonwealth included the following. First, Detective Witmer described his discovery that entire packs of activated tickets were missing from Bellefonte Mart's inventory kept by employees. All of the ticket packs missing from the inventory were activated around 6:00 a.m. during shifts worked by Appellant when she was the sole employee in the store.

Second, some of the missing activated packs of tickets were redeemed for cash in batches around the same time and in sequential order. According to Detective Witmer and Rhodes, this indicated that it was most likely one person who possessed the entire pack of tickets and pulled all of the winning tickets for redemption. Because the packs of tickets were so expensive –

some as much as $900 – it was unusual for one person to purchase an entire pack. Additionally, some of these tickets were redeemed at Bellefonte Mart during the early morning hours when only Appellant was working.

Third, on March 24, 2018, around 6:00 p.m., Appellant cashed in a stack of high-value scratch-off lottery tickets at a customer service desk at Weis Markets in Bellefonte that came from a stolen pack. During her testimony, Hanley, the customer service representative, identified Appellant as the person who cashed in the tickets. Hanley testified that the payout totaled $2,000 to $2,500. Hanley recalled that many of the tickets were for games with a high payout, such as $20. Hanley described Appellant's behavior as a "180 from [her] regular lottery customers" because Appellant did not seem to be "emotionally invested" like other customers typically were. N.T., 7/29/2019, at 100-01. The Commonwealth also introduced video footage from Weis Markets' security system showing Appellant at the customer service desk during the transaction.

Detective Witmer also testified regarding two interviews he conducted of Appellant. The first was on August 9, 2018. Detective Witmer called Appellant and asked her to come to the police station to discuss issues at Bellefonte Mart. Appellant agreed. When she arrived at the interview, she told Detective Witmer that she had resigned from her employment at Bellefonte Mart the previous day. She initially denied stealing the tickets, but when Detective Witmer told her about some of the evidence the police had gathered,

Appellant admitted she had been stealing ticket packs and individual tickets from Bellefonte Mart and redeeming them for cash. Appellant told Detective Witmer she started stealing between March and May 2018, and she stole approximately $8,000 worth of tickets to pay for heating fuel, to give money to her son and another person who lived with her, and to pay for her gambling problem. According to Detective Witmer, Appellant appeared emotional and remorseful, and she wanted to pay her employer back. Detective Witmer neither obtained a written statement from Appellant nor recorded the interview. He did not arrest Appellant that day because he planned to wrap up his investigation first.

Approximately one week later, Appellant contacted the police station and requested to speak to Detective Witmer so she could "renege on her confession." *Id.* at 155, 171. She returned to the station on August 17, 2018. This time, her demeanor was different. She was disrespectful towards Detective Witmer and yelled and cursed at him. Part of her yelling included assertions that other employees stole lottery tickets and a candy bar. She did not say she lied during the first interview, but told Detective Witmer that she did not steal from Bellefonte Mart. Again, Detective Witmer did not obtain a written statement from Appellant nor record the interview.

During her testimony at trial, however, Appellant denied confessing to Detective Witmer on August 9, 2018. She claimed Detective Witmer did not ask her if she stole from Bellefonte Mart. Instead, she said he asked her how

many games she played from Bellefonte Mart. She denied stealing the tickets from Bellefonte Mart and claimed she bought the tickets she redeemed for cash. When the prosecutor asked her if she thought it was unusual to have every winning ticket from a single pack, Appellant insisted it was simply a "game of chance." *Id*. at 216. As detailed more *infra*, the prosecutor cross-examined Appellant repeatedly, over defense objections, as to whether Appellant believed Detective Witmer had been lying when he testified she had confessed to stealing the lottery tickets.

Following the trial, the jury found Appellant guilty of all charges. On September 6, 2019, the trial court sentenced Appellant to six months to twenty-three and one-half months of imprisonment, followed by one year of probation for the theft charge. The court imposed no further penalty on the remaining two charges. Appellant timely filed a post-sentence motion challenging the questions regarding lying which the prosecutor had asked Appellant on cross examination. Following briefing and oral argument, on May 26, 2020, the trial court issued an order denying the motion, which was accompanied by an opinion. This timely-filed appeal followed. Appellant complied with the trial court's order to file a concise statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), and the trial court directed this Court to its May 26, 2020 opinion in lieu of a separate Rule 1925(a) opinion.

On appeal, Appellant sets forth one issue:

Did the [t]rial [c]ourt err and/or abuse its discretion in overruling numerous defense objections to the prosecution's argumentative, improper, and prejudicial cross-examination of [Appellant], and in allowing the prosecution to ask her improper questions as to her opinion as to the credibility and veracity of the prosecutions' witnesses, … Singh and Detective Witmer, *i.e.*, were these witnesses lying during their testimony?

Appellant's Brief at 7.

In reviewing this issue, we bear the following in mind. Our review of a trial court's evidentiary ruling is narrow. ***Commonwealth v. Yockey***, 158 A.3d 1246, 1254 (Pa. Super. 2017).

The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. A party suffers prejudice when the trial court's error could have affected the verdict.

Contrariwise, an erroneous ruling by a trial court on an evidentiary issue does not require us to grant relief where the error was harmless. ***Commonwealth v. Chmiel***, [] 889 A.2d 501, 521 ([Pa.] 2005). Our Supreme Court has held:

Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Id.* (internal quotations and citations omitted). "An error will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict." *Id.* at 528. "If there is a reasonable possibility that the error may have contributed to the verdict, it is not harmless. The burden of establishing that the error was harmless rests upon the Commonwealth." *Id.*

*Yockey*, 158 A.3d at 1254 (some citations, quotation marks, and parentheticals omitted).

On appeal, Appellant challenges certain questions the prosecutor asked Appellant during cross-examination. Appellant argues that the questions asked her to opine repeatedly on the credibility of prosecution witnesses and "were argumentative, improper, and prejudicial." Appellant's Brief at 15. Because the question of a witness's credibility is reserved exclusively for the jury, Appellant contends the trial court erred by permitting the questions pursuant to *Yockey*. Appellant's Brief at 15-16. However, unlike *Yockey*, where this Court determined the admission of impermissible credibility opinion questions was harmless error and did not warrant a new trial, Appellant argues that the error in the instant case was prejudicial enough to impact the verdict, particularly because she was testifying in her own defense as the accused. *Id.* at 22-24. Appellant argues the prosecutor's questions placed her "in a no-win situation, where she either needed to discredit her own testimony, call Detective Witmer and her former boss liars, or speculate as to some alternative explanation as to why her testimony differed." *Id.* at 24. Appellant contends a new trial is warranted because her answers "infected her

entire testimony and alienated her from the [j]ury by appearing antagonistic or accusatory." *Id.*

Specifically, Appellant challenges the trial court's rulings on three objections she made at trial during her cross-examination by the prosecutor.[2] The first objection occurred as follows.

> Q. According to you, only portions of what [Detective Witmer] testified to is [*sic*] true, right?
>
> A. Excuse me?
>
> Q. You're saying today that some of what he testified to – you're saying he lied when he testified about his interview with you?
>
> A. I'm saying that he wasn't telling the truth.
>
> **Q. So you're saying he lied?**
>
> **[Defense counsel:] Objection; argumentative.**
>
> **[Trial Court:] Overruled.**

N.T., 7/29/2019, at 209-210 (emphasis added). Appellant did not answer the objected-to question because following the ruling on the objection, the prosecutor moved on to another question. Shortly thereafter, however, the prosecutor asked another series of questions that culminated in the second defense objection.

---

[2] In her brief, Appellant also challenges a question asking if Singh was lying. Appellant's Brief at 22 (citing N.T., 7/29/2019, at 219). Because Appellant did not object to this question at trial, she has waived this claim of error. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Leaner*, 202 A.3d 749, 771 (Pa. Super. 2019) (holding failure to object contemporaneously waives issue for appeal).

Q. So you deny that you ever had a conversation with Detective Witmer about how many packs you stole?

A. Exactly.

Q. Then why did you go back to renege on your confession if you never confessed?

A. Because my sons had told me that – after I explained to them exactly what I had said to Officer Witmer, they said he may have misunderstood the fact of what you were trying to tell him.

Q. So you went back because you thought by you telling him you played two packs of tickets that somehow that's a confession?

A. Yes.

Q. It wasn't the fact you told him you stole four packs of tickets?

A. I never said I stole four packs of tickets, ma'am.

Q. You admitted to taking the single tickets?

A. No.

Q. You deny that, too?

A. I never stole anything from that store.

Q. You told him that there was too much temptation being around all of the scratch tickets?

A. Exactly, to play them, not to steal them.

Q. And then you admitted to stealing $8,000 worth of tickets?

A. No, I did not.

Q. So he's making that up?

A. I don't know where he got that figure from.

Q. Did you give him any figure?

A. No, no.

**Q. So Detective Witmer, fifteen years of experience, is going to put his career on the line and make up a story about what you confessed to?**

**[Defense counsel]: Objection; argumentative.**

**[Prosecutor]: That's her defense, that's what she's saying. I'm allowed to question it.**

**[Trial Court]: I'll overrule it.**

**[Appellant]: What was the question again, please.**

**[Prosecutor]: My question was, Detective Witmer, who has fifteen years of experience as a police officer, would get on the stand and say that you confessed to a crime, risk his career and make this up; that's what you're saying?**

**A. I don't know what his motive is.**

Q. You have a motive. You have everything to gain by saying that's a lie, right?

A. I was telling him the truth.

*Id.* at 210-213 (emphasis added). The third objection occurred at the end of the cross-examination as follows.

Q. So you claim that you never admitted to Detective Witmer stealing packs of tickets?

A. Exactly. I never admitted to him that I stole anything from that store.

**Q. So he lied about that?**

**[Defense counsel]: Objection; argumentative.**

**[Prosecutor]: They can't both be true, so I'm asking her to confirm that.**

**[Trial Court]: Overruled.**

**[Prosecutor]: So he lied?**

**A. He lied.**

Q. You never admitted to stealing single tickets; so he lied about that?

A. No, I never said I stole the single tickets. He lied about that, too.

Q. You never admitted to stealing about $8,000 from [Singh and his wife]?

A. No, I did not.

Q. So he lied about that, too?

A. If that's what the amount was, he lied about it.

Q. You were here today when he testified; you heard him, right?

A. Yes.

Q. So he was lying?

A. He was lying.

[Prosecutor:] Nothing further.

*Id.* at 220-21 (emphasis added).

The law in this Commonwealth is clear that lay witnesses generally may not opine upon the credibility of other witnesses. *See Commonwealth v. O'Searo*, 352 A.2d 30, 32 (Pa. 1976) ("Traditionally, we have recognized not only the jury's ability to determine the credibility of the witnesses but also we have placed this determination within their sole province."). In *Yockey*, this Court concluded that Pennsylvania law generally prohibits "were they lying"

- 12 -

types of questions because such questions offer little to no probative value, ignore alternative explanations for testimonial inconsistencies, infringe upon the province of the factfinder to assess credibility, and are argumentative. *Yockey*, 158 A.3d at 1256.

In the instant case, the trial court did not attempt to defend its rulings. Instead, in its opinion following its denial of the post-sentence motion, the trial court simply contended "allowing the Commonwealth to question [Appellant] on the veracity of Detective Witmer's testimony was, at most, harmless error." Trial Court Opinion, 5/26/2020, at 4. For its part, the Commonwealth defends its questions, arguing that the questions were permissible because it merely "sought to challenge the veracity of Appellant's defense" and "only one version of the stories told could be true." Commonwealth's Brief at 9.

Upon review, we conclude the repeated questions asking Appellant whether Detective Witmer was lying were argumentative and the trial court erred by permitting such questions pursuant to *Yockey*. Nevertheless, despite Appellant's urging, we conclude this error was harmless and does not constitute reversible error. Even if the improper argumentative cross-examination caused the jury not to like Appellant or not to believe her when she denied stealing tickets, the prejudicial effect of the error was insignificant by comparison to the properly admitted evidence of guilt against Appellant. *See Chmiel*, 889 A.2d at 521. The Commonwealth proved Appellant had

access to the tickets and the ticket packs missing from the Bellefonte Mart inventory were typically activated while Appellant was the only employee in the store. Moreover, through video and testimonial evidence, the Commonwealth proved Appellant cashed in a large amount of stolen tickets at Weis Markets. Accordingly, we conclude "beyond a reasonable doubt that the error could not have contributed to the verdict" and was harmless. *Yockey*, 158 A.3d at 1254. We affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/21/2021